UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE PLAINTIFF a/k/a : | CIVIL ACTION NO. 301 CV 184 (DJS) |
| ARTHUR L. KALADISH : | |
| Plaintiff : | |
| : | |
| V. : | |
| : | |
| UNUMPROVIDENT CORPORATION AND : | |
| PROVIDENT LIFE & CASUALTY : | |
| INSURANCE COMPANY : | |
| Defendants : | JANUARY 14, 2004 |

**MOTION TO COMPEL**
**and**
**MOTION FOR SANCTIONS**

The court issued a comprehensive Ruling and Order (Sep. 4, 2003) with regard to numerous outstanding computer and discovery issues. Unfortunately, the Plaintiff has refused to comply with the Court's order on a number of these issues. Indeed, although counsel for the defendants UnumProvident Corporation and the Provident Life & Casualty Insurance Company ("Provident") has tried on several occasions to inquire as to when Provident might receive some of these items, her entreaties have been ignored.

**I.    VIOLATION OF COURT ORDER**

In short, the following orders still have not been compiled with by the Plaintiff:

1.    <u>The e-mail privilege log from the *first* computer search</u>.

The Court's order states that the defendants would have their expert prepare a fourth CD containing only e-mails and which should be sent to the defendant which was done. The order further states that the plaintiff will provide defendant's counsel with a privilege log within 10 days of receipt of the CD. This was not done with this 10 day time frame, but ultimately Plaintiff did submit a privilege log which was reviewed by defendants' counsel. Plaintiff's previous counsel (Attorney Louis Bonsangue) conferred with Defendants' counsel to determine a list of "contested" documents. Defendants' last

communication on this issue was a November 14, 2003 letter to Atty. Bonsangue reflects the status of this issue. In this letter it was noted that the parties should get moving on the e-mail privilege log as it was not a matter of being several weeks behind schedule at this point but several months. See **Exhibit A**, (copy of 10/14 and 11/14 correspondence to Attorney Bonsangue).

2. <u>The Stipulation of Eric Oram.</u>

The Court Order stated that the parties will prepare and the plaintiff will order into a stipulation regarding the expert's "computer search" findings. Plaintiff's counsel submitted a draft Stipulation to Attorney Bonsangue in mid-November 2003. To date, defendants have received no comments or response from Plaintiff with regard to the proposed stipulation.

3. <u>The Laptop Computer Search</u>.

The Court ordered the search of Plaintiff's laptop computer. The search was conducted and the "hits" placed upon CDs. However, due to the scope of the search and the length of time it took to search the computer, the expert for the "laptop" search has requested payment prior to releasing the CDs. On November 23, 2003, an invoice was sent by the expert to the two parties for this work. Attorney Bonsangue informed defendants' attorney that he had sent the expert's request for payment to Plaintiff's new counsel. See **Exhibit E**.

As of the date of this Motion, the expert has not even been contacted by Plaintiff's new counsel much less paid for his work. Accordingly, <u>all</u> of the results of the laptop search are still unavailable. Thus, even when the CDs are received, Plaintiff will still need time to go through the documents, create a privilege log, send a list of the contested documents to court, etc.

**II.   DEFENDANTS ATTEMPT TO RESOLVE THE SITUATION**

Defendants' counsel called Plaintiff's new attorney, Tracey Alan Saxe, on or about Friday, December 5, 2003 and left a message in his voice mail box asking him to call her to discuss the case. See **Exhibit B**, (Affidavit of Helen M. Kemp, Counsel for Defendant). To the best of her information and belief, she also spoke with his secretary and was informed that Attorney Saxe would be out of the office until Wednesday, December 10, 2003. Defendant's counsel followed up her voice mail message with a letter outlining the issues and requesting that Attorney Saxe contact her. See **Exhibit C** (copy of 12/8/03 letter).

Attorney Saxe did not contact defendants' counsel and Attorney Kemp wrote another letter to Attorney Saxe on January 2, 2004. See **Exhibit D**, (copy of 1/2/04 letter). The following week, Attorney Kemp received a phone call from Attorney Chastity DaSilva who suggested setting up a meeting to discuss the outstanding issues. Attorney Kemp agreed to the meeting and one was set up for Tuesday, January 13, 2004. The day before the meeting, while Attorney Kemp was out of the office at a deposition, Attorney DaSilva called and left a voice mail message stating that the meeting would have to be cancelled as Attorney Saxe would be out of state. See Exhibit B, (Kemp Affidavit). Attorney Kemp called Attorney DaSilva on Tuesday, January 13, 2004 and left a message requesting a call back.

Attorney Kemp then looked up Attorney DaSilva's e-mail address and sent her, and the computer expert, an e-mail inquiring about the status of the computer search. See **Exhibit E**, (copy of e-mail). The computer expert replied that he was still awaiting payment from Mr. Kaladish but that the work has been completed and once payment is received he would send out the disks out within 48 hours.

### III. LEGAL ARGUMENT

   A.   Rule 37 Permits the Court to Impose Sanctions Under the Circumstances of This Motion

Rule 37 promotes "strict adherence to the 'responsibilities counsel owe to the Court and to their opponents.'" Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1067 (2d Cir. 1979) (quoting National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 640, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). As the Supreme Court has emphasized, Rule 37 sanctions "must be applied diligently both to penalize those

whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such deterrent." Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-64, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (Rule 37 sanctions are intended "to serve a general deterrent effect on the case at hand and on other litigation.")

Defendants seek sanctions due to the egregious conduct of plaintiff who flouted, and continues to flout, his discovery responsibilities. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that if a party fails to obey a discovery order, the court "may make such orders in regard to the failure as are just," including, but not limited to,

> "[a]n order that . . . designated facts shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order." Fed.R. Civ. P. 37(b)(2)(A). Rule 37(b) also provides that, in lieu of or in addition to any other appropriate order, the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b) (emphasis added).

Provident notes that even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs. DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998). See generally Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (quoting United States v. Hudson, 7 Cranch 32, 34 (1812)).

Plaintiff's discovery "gamesmanship" justifies the imposition of sanctions pursuant to the court's inherent power to impose against parties who abuse the litigation process. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-45, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (noting that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court, because they are necessary to the exercise of all others.") (internal quotations and citation omitted). Such misconduct may include where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45-46. Provident asserts that the Plaintiff has acted for oppressive reasons – mainly – to delay the start of the trial.

B.   The Nature of the Alleged Breach of a Discovery Obligation

Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation), to declare a mistrial if trial has already commenced, or to proceed with a trial and give an adverse inference instruction. See Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 267 (2d Cir.1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.").

IV.   CONCLUSION

While defendants understand that delays do occur, there is no excuse for Attorney Saxe's neglect in contacting defendants' counsel about these issues. Neither is there any excuse for Attorney Saxe's complete failure to forward payment to the computer expert. Plaintiff is well aware that a joint trial memorandum is due on this case on January 30, 2004 and that defendants

need this information to prepare their portion of that memorandum. If defendants are successful on their claims, not only will Plaintiff lose $8,600 per month in benefits, but damages could be well in the six figures. It obviously is to Plaintiff's benefit to delay all aspects of trial as much as possible.

Plaintiff's willful "neglect" in failing to resolve the computer search and other discovery issues has seriously impaired defendants' ability to prepare both their portion of the joint trial memorandum and to prepare for trial. Accordingly, defendants seek:

(1) An order from the court compelling *immediate* payment to New England Computer Forensics so that the expert will release the "laptop" computer CDs to Plaintiff;

(2) An order from the court compelling Plaintiff to provide a privilege log to defendants' counsel within *five days* of the "laptop" CDs receipt and to provide a list of the contested documents to the court within *five days* upon comment from defendants' attorney;

(3) An order from the court allowing the Affidavit submitted by Eric Oram attached as Exhibit B to Defendants' Motion for Inference to be the stipulated Affidavit as noted in the Court's Ruling and Order, Part B-1.

(4) An order allowing the Joint Trial Memorandum to be due on March 1, 2004 to give Plaintiff time to submit this information to defendants for their use at trial.

(5) An order directing the Plaintiff to *immediately* produce copies of all documents not deemed privileged or not contested as privilege to Defendants;

(6) An order allowing Provident to cease the payment of disability benefits to Plaintiff and instead, to place such benefits into an escrow fund until the court has adjudicated all claims; and

(7) Attorney fees for the cost of this motion.

UNUMPROVIDENT CORPORATION
AND PROVIDENT LIFE & CASUALTY
INSURANCE COMPANY

By  /s/ Helen M. Kemp
Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: hkemp@rc.com

- 8 -

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, certified mail, return receipt requested, on this 14th day of January, 2004, to

Chastity DaSilva
Sax Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT  06517

*Helen M. Kemp*
Helen M. Kemp