## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE PLAINTIFF a/k/a | : | CIVIL ACTION NO. 301 CV 184 (DJS) |
| ARTHUR L. KALADISH | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| UNUMPROVIDENT CORPORATION AND | : | |
| PROVIDENT LIFE & CASUALTY | : | |
| INSURANCE COMPANY | : | |
| Defendants | : | FEBRUARY 10, 2004 |

### REPLY TO PLAINTIFF'S OBJECTION TO
### DEFENDANTS' MOTION TO COMPEL
### and
### MOTION FOR SANCTIONS

Review of plaintiff's newly engaged counsel's objection to defendant's motion to compel immediately brings to mind the French expression *"Plus ca change, plus c'est le meme chose."*[1] Plaintiff's objection contains the same duplicitous statements and allegations that have peppered his previous attempts to thwart discovery and delay the start of trial. Defendants address these statements and allegations in *seritam.*

1.   <u>Appearance in the Case</u>

Defendants do not disagree that plaintiff's new counsel filed appearances with the court on or about December 16, 2003 however, to the extent that plaintiff is implying this is also the same date that new counsel *received* the file, defendants do disagree. Plaintiff's new counsel

---

[1] "The more things change, the more they remain the same." Alphonse Karr, *Les Guepes/Les Femmes* (1849)

received the file in early to mid-November 2003, at least one month prior to the filing of their appearance and any implication to the contrary is misleading. Defendants asset that plaintiff's new counsel has had ample time to review the file and to respond to their counsel's calls and letters concerning discovery issues when these additional thirty days are factored in the time frame.

      2.     <u>Plaintiff's Claim Re: Resolving Outstanding Discovery Issues</u>

With regard to plaintiff's counsel claim that they have been "diligently attempting to assess and resolve the outstanding discovery issues", (*P. Obj*., p. 2), defendants assert that the only "diligent attempts" plaintiff is making are his attempts to delay the start of the trial and to prevent the defendants from securing discovery. Defendants note that their counsel called Plaintiff's new attorney, Tracey Alan Saxe, on or about Friday, December 5, 2003 and left a message in his voice mail box asking him to call her to discuss the case. See D. Mot. (Exh. B) Defendant's counsel followed up her voice mail message with a letter outlining the issues and requesting that Attorney Saxe contact her. See <u>Id</u>., (Exh. C). Attorney Saxe still did not contact defendants' counsel and Attorney Kemp wrote another letter to Attorney Saxe on January 2, 2004. See <u>Id</u>., (Exh D.) Attorney DaSilva (not Attorney Saxe) finally called defendants' counsel on January 6, 2004 – one full month *after* Attorney Kemp's initial call.

While admittedly Attorney Saxe did schedule a meeting to discuss the outstanding issues on January 14, 2004, Attorney Saxe also cancelled the meeting on January 12, 2004 and did not attempt to reschedule.[2]  Attorney Saxe also did not return Attorney Kemp's January 13, 2004 phone call by the close of day on January 14, 2004 thus necessitating the filing of defendants'

---

[2] Attorney Kemp disagrees with Attorney DaSilva that her January 12, 2004 voicemail message included an offer to reschedule the meeting.

motion to compel. Indeed, even after receiving defendants' Motion to Compel, Attorney DaSilva

never called to try and resolve some of the outstanding issues. In her Affidavit, Attorney DaSilva

admits to receiving Attorney Kemp's January 14, 2004 e-mail inquiring about the status of

plaintiff's payment to the computer expert but states she only responded to it after receiving a

copy of defendant's Motion to Compel.

In short, while Plaintiff's attorneys may have been "diligently reviewing the file", they

have not applied the same diligence to returning telephone calls and resolving the issues.

3.    The e-mail privilege log from the *first* computer search.

Once again, when devoid of posturing, plaintiff's position as to why he has been unable

(or unwilling) to comply with this aspect of the court order is unavailing.  The facts are that by

November 14, 2003, plaintiff's previous counsel, Attorney Bonsangue, and defendants'

counsel, Attorney Kemp, had worked out almost all the issues with regard to the e-mail

privilege log.  Attorney Bonsangue had created the log, Attorney Kemp had reviewed it, and

both attorneys had discussed it and resolved all disputes except for one.  The remaining dispute

concerned *one* e-mail a part of which Attorney Bonsangue wanted to redact because he

maintained it was a personal communication and Attorney Kemp maintained it was relevant.

Thus, the only dispute with regard to the e-mail log concerned *a part of one e-mail*. See D. Mot

(Exh. A.).  Attorney DaSilva states that "since the receipt of defense counsel's comments

concerning the e-mail in dispute on the Privilege Log, plaintiff's counsel has gone to

*considerable effort* to avoid the necessity of bringing this discovery dispute before the Court."

(P. Obj., p. 4) Defendants assert that this is simply not true.  First, Plaintiff's new counsel has

gone to no effort whatsoever to resolve the dispute and second, any efforts made to avoid

bringing this issue before the court was made between Attorney Bonsangue and Attorney Kemp prior to November 14, 2003. In short, all plaintiff's current counsel needed to do was to submit the log and this one issue to the court for its adjudication.

    4.     The Stipulation of Eric Oram.

    The Court's Ruling and Order (Sep. 4, 2003) clearly stated that; "[t]he parties will prepare, and plaintiff will enter, into a stipulation regarding the expert's "computer search" findings as shown in Paragraphs #7, 8, 9, 10 and 11 of his Affidavit. This is what has been done. *See* proposed stipulation attached to Plaintiff's Objection as Exhibit B.

    Plaintiff now states that because the proposed stipulation contains statements by Oram regarding his manner of conducting the search, as well as his proposed findings and conclusions, they cannot stipulate to the proposed stipulation. Defendants note that this is the *first* that they have learned of plaintiff's dissatisfaction with the proposed stipulation. If the plaintiff was indeed attempting to resolve issues without the involvement of the court, then the court should ask why he did not explain these concerns to the defendants although he has had at least two months (December 5, 2003 to February 3, 2004) to do so.

    In any event, defendants have revised the stipulation so that it conforms, pursuant to the court order, to Paragraphs 7-11 of Oram's Affidavit. Defendants have submitted the same to plaintiff's counsel on February 10, 2004.

    5.     The Laptop Computer Search.

    Defendants do not dispute that on or about February 3, 2003, the plaintiff sent a check to the computer expert for payment for his work. However, in his Objection, plaintiff offered no explanation to the court as why payment has taken so long. Indeed, plaintiff offered no

explanation as to why, even after defendants filed a motion on January 14, 2004 decrying this lack of payment; it still took him *three weeks* to submit payment to the expert. Defendants' counsel was informed by the computer expert that he hand-delivered the CDs concerning the search of the laptop computer to plaintiff's counsel on February 6, 2004. Accordingly, and pursuant to the court's scheduling order, defendants' counsel will expect the privilege on or about February 18, 2004.

     6.    The Appropriateness of Sanctions

As of the date of defendants' Motion to Compel, the following orders had not been compiled with by the Plaintiff:

1.    The e-mail privilege log from the *first* computer search.

2.    The Laptop Computer Search (payment of the expert).

3.    Stipulation of Eric Oram

Three weeks after defendant's motion, the plaintiff still has not sent the e-mail privilege log from the first computer search to court[3], the computer expert has only recently (within a day or two) received a check for payment of an invoice sent out on November 23, 2003 and defendants only recently (via Plaintiff's Objection) learned of Plaintiff's concerns with the proposed Oram stipulation.

In her Objection and Affidavit, Attorney DaSilva references sixty pleadings that were filed by the parties. Defendants note that seven (7) of these were Motions to Compel that they were forced to file due to Plaintiff's non-compliance with orders of the court. For example, defendants were forced to file a Motion to Compel with regard to this very laptop computer

---

[3] Indeed, plaintiff is asking until February 17, 2004 to submit the document.

search as although the court's order with regard to the original search included <u>all</u> computers

owned by the Plaintiff, Plaintiff did not disclose that he owned a laptop computer and had not

provided to the expert to be searched. Thus, delay, and the excuses propounded by the plaintiff

for delay, are not new to this case.

Rule 37 promotes "strict adherence to the 'responsibilities counsel owe to the Court and

to their opponents.'" <u>Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.</u>,

602 F.2d 1062, 1067 (2d Cir. 1979) (quoting <u>National Hockey League v. Metropolitan</u>

<u>Hockey Club</u>, 427 U.S. 639, 640, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). As the Supreme

Court has emphasized, Rule 37 sanctions "must be applied diligently both to penalize those

whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be

tempted to such conduct in the absence of such deterrent." <u>Roadway Express, Inc. v. Piper</u>,

447 U.S. 752, 763-64, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); <u>Update Art, Inc. v. Modiin</u>

<u>Publishing, Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988) (Rule 37 sanctions are intended "to serve a

general deterrent effect on the case at hand and on other litigation.")

Defendants seek sanctions due to the egregious conduct of plaintiff who has flouted his

discovery responsibilities on numerous occasions and currently by his complete failure to

abide by the court's September 4 <u>Ruling and Order</u> with regard to the above cited discovery

issues.

Although a finding of bad faith is not a prerequisite to the imposition of sanctions under

Rule 37(d), the duplicity of plaintiff in his Objection cannot go unnoticed in this matter. This

discovery "gamesmanship" justifies the imposition of sanctions pursuant to the court's

inherent power to impose against parties who abuse the litigation process. See <u>Chambers v.</u>

NASCO, Inc., 501 U.S. 32, 43-45, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (noting that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court, because they are necessary to the exercise of all others.") (internal quotations and citation omitted).  Sanctions may be imposed under a court's inherent power to sanction a party's misconduct during the course of litigation.  Such misconduct may include where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Id. at 45-46.

To further its purposes, Rule 37 provides courts with the discretion to employ "a wide spectrum of sanctions," the "mildest" of which is "an order to reimburse the opposing party of expenses caused by the failure to cooperate."  Cine Forty-Second Street, 602 F.2d at 1066. Whereas imposition of severe sanctions such as dismissal require a finding of willfulness, bad faith, or fault, *the lesser sanctions may be predicated on innocent failure to produce*.  See Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958) (emphasis added).

## 6.    CONCLUSION

Defendants assert the plaintiff's willful failure to abide by the court's order was done solely to delay the start of trial. Accordingly, defendants seek:

(1)    An order from the court compelling Plaintiff to provide a privilege log to defendants' counsel within *five days* of the "laptop" CDs receipt and to provide a list of the contested documents to the court within *five days* upon comment from defendants' attorney;

(2)    An order from the court allowing the Affidavit submitted by Eric Oram attached as Exhibit B to Defendants' Motion for Inference to be the stipulated Affidavit as noted in the Court's Ruling and Order, Part B-1.

(3)    An order directing the Plaintiff to *immediately* produce copies of all documents not deemed privileged or not contested as privilege to Defendants;

(4)    An order allowing Provident to cease the payment of disability benefits to Plaintiff and instead, to place such benefits into an escrow fund until the court has adjudicated all claims; and

(5)    Attorney fees for the cost of this motion.

UNUMPROVIDENT CORPORATION
AND PROVIDENT LIFE & CASUALTY
INSURANCE COMPANY

By _Helen M. Kemp_

Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: hkemp@rc.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, certified mail, return receipt

requested, on this 10th day of February, 2004, to

Chastity DaSilva
Sax Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT  06517

Helen M. Kemp
_____
Helen M. Kemp