UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE KALADISH a/k/a : | CIVIL ACTION NO. 301 CV 184 (DJS) |
| ARTHUR L. KALADISH : | |
| Plaintiff : | |
| : | |
| V. : | |
| : | |
| UNUMPROVIDENT CORPORATION AND : | |
| PROVIDENT LIFE & CASUALTY : | |
| INSURANCE COMPANY : | |
| Defendants : | FEBRUARY 19, 2004 |

**OBJECTION TO NON-PRODUCTION OF DOCUMENT**
***(IN CAMERA* REVIEW)**

The defendants UnumProvident Corporation and the Provident Life & Casualty Insurance Company ("Provident"), hereby move this Court to issue an order compelling plaintiff to produce all of the information contained on File 292512, page six of CD4 (the e-mail CD) as noted in Plaintiff's *Request for In Camera Review* (dated February 17, 2004). Relevant to this objection is defendants' assertion that rather than being a service technician, plaintiff's occupation was that of a real estate developer and magnate: buying and selling real estate and managing and renting commercial and residential properties.

**I.   PROCEDURAL FACTS**

As a result of a search of plaintiff's hard drive (hereinafter referred to as the *first computer search*), plaintiff's attorney was given a total of four (4) compact discs ("CDs") representing the documents obtained as a result of the search. Plaintiff reviewed three of these CDs for documents for privileged material and listed over 260 documents that he claimed were either privileged or beyond the scope of the computer search. He sent this log to defendants'

counsel on April 24, 2003 who reviewed the documents and plaintiff's claims of privilege. A compromise could not be reached on these items and the matter (concerning what is privileged and what it not) is currently before the court. The Court has not adjudicated these issues as it waited for a similar privilege log (and list of contested items) from the fourth CD representing "hits" found from a search of the Plaintiff's "e-mail."

On or about February 17, 2004, the plaintiff sent to this court a request for an in *camera* review of documents listed on the "e-mail" privilege log. The plaintiff contends that a portion of one of these e-mails on CD4 is beyond the scope of discovery. Defendants assert that contrary to plaintiff's contention, certain information on this "e-mail" is indeed relevant to the case at bar and that the entire e-mail should be produced.

## II.     DEFENDANTS' CLAIMS OF LAW

It is important to remind the court that defendants' counterclaims assert that throughout the time he was disabled, plaintiff misrepresented the nature and duties of his occupation(s). As background, it is defendant's position that while plaintiff may have sporadically performed some manual labor as a service technician and even worked in an administrative capacity for L & L Graphics, plaintiff's true occupation was that of a real estate developer and magnate: buying and selling real estate and managing developing commercial and residential properties.

As stated in their counterclaims, defendants' position is that at the time he became disabled (February 1999), plaintiff held more than one occupation – in addition to his work with L& L Graphics, for example, he managed a catfish farm, bought and sold real estate, managed and owned rental property (e.g. 1100 Boston Ave., *a/k/a "Boston Avenue Industrial Park*", and others) from which he derived his income. Defendants assert that rather than being a service technician plaintiff's position was that of a real estate developer and magnate: buying and selling

real estate, developing real estate companies and managing and renting commercial and residential properties which he continued to do during the time he claimed to be disabled.

Indeed, the facts show that the "service technician" employment agreement he had with L&L Graphics was a simply a device advised by his accountant where if he wanted to "... sell the company, [he] would legally be able to withdraw that money." (See **Exhibit A**, Deposition of Arthur L. Kaladish (p. 52). To further demonstrate that the plaintiff's alleged occupation as a service technician was merely a legal façade (or perhaps to show a source of income), defendants note that during his alleged tenure as a "service technician," plaintiff **never** received a paycheck, "W-2" wages or any income as a service technician. (Exh. A pp. 51-55).

Indeed, it is important to note that that plaintiff's personal tax returns show that he **never** received any "W-2" or wage income at all in 1998, 1999 or 2000.[1] The source of plaintiff's income came not from L & L Graphics, but rather from capital gains from the sale of stocks, real

---

[1] The fact that plaintiff paid no social security or Medicare tax on the income he received from L&L Graphics signifies that he only performed "minor services" for L & L Graphics indicating his occupation was not a "service technician". If plaintiff's occupation was that of a service technician, L&L Graphics would have had to pay both FICA and FUTA payroll taxes on his employment. Both the FICA and the FUTA impose taxes on employers based on the wages paid to individuals in their employ. 26 U.S.C. §§ 3111, 3301. "Wages," as defined by both Acts, includes, with certain exceptions not applicable here, "all remuneration for employment . . . ." 26 U.S.C. §§ 3121(a), 3306(b). Employment is "any service of whatever nature, performed . . . by an employee for the person employing him . . . ." 26 U.S.C. §§ 3121(b), 3306(c). Employee is defined by the FICA as:

(1) any officer of a corporation; or

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]

26 U.S.C. § 3121(d). Under the FUTA, the term employee, with certain exceptions not relevant here, has the same meaning as § 3121(d) of the FICA. 26 U.S.C. § 3306(i). The general rule that an officer of a corporation is an employee of that corporation is restated in Treasury Regulation § 31.3121(d)-1(b). That regulation further specifies that there is an *exception* for an "officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration[.]" Treas. Reg. § 31.3121(d)-1(b). The regulations promulgated pursuant to the FUTA are identical. Treas. Reg. § 31.3306(i)-1(e). Since plaintiff did not pay FICA or FUTA on the income he received from L&L Graphics, then pursuant to these regulations, he could only have performed "minor services" on behalf of the corporation. Accordingly, as he only performed "minor services", his work for L&L Graphics could not be considered his occupation.

estate and rentals, and income from other businesses such as a catfish farm in Mississippi. (Exh. A. pp. 161-167).

With this as background, and relevant to defendant's position regarding the privilege log, is that an insured who has two or more occupations must show that he or she is disabled as to all occupations in order to collect under his or her disability policy. *Brotman v. National Life Ins. Co.*, 1997 WL 442173 (E.D.N.Y. 1997); *Brumer v. National Life of Vermont*, 899 F. Supp. 120 (E, D.N.Y. 1995); see also *Brumer v. National of Vermont*, 133 F. 3d 906 (2d Cir.)(1998). Thus, defendants believe that any documents which show that Plaintiff worked in or for L & L Graphics in any capacity or worked at one "real estate" occupations from 1999 through 2002, is relevant to this case and their claims.

### III.   THE E-MAIL IN QUESTION

As noted by plaintiff, there is only one e-mail in dispute. The e-mail is from Madelyn Starkey and was sent to the plaintiff. Plaintiff would have us believe that the e-mail is simply from "...Plaintiff's friend and contains personal advice regarding unhealthy habits and a reminder for the Plaintiff to sign his tax forms." (P. Req. for *In Camera* Review p. 4).

First, defendants note that by Ruling and Order (Oct. 5, 2001). (a copy of which is attached as **Exhibit B**.) this court ordered plaintiff to produce his 1998, 1999 and 2000 individual and business tax returns (along with W-2s and balance sheets). Thus, to the extent that Starkey is commenting upon any tax forms signed and/or filed to defendants during these years, the court has already determined that the information is relevant and ordered production.

Second, defendants note that Starkey is more than plaintiff's "friend." Starkey was plaintiff's "Comptroller" for at least one of his companies, (Exh. A. pp. 29-31). Defendants note to the court that the duties of a comptroller generally include the provision of accounting and

- 4 -

financial services (including accounts payable, accounts receivable and payroll), the administration of employee benefits, the development of accounting policy and the preparation of reports. To the best of defendants' information and belief, Starkey still provides these services for plaintiff. See **Exhibit C** (copy of privilege log Re: Starkey e-mails; *see also* Starkey 5 e-mail regarding invoices, taxes and insurance). Defendants also note that although Plaintiff has denied it, in 1999, Starkey was also an officer of L&L Graphics. (See **Exhibit D**). Indeed, L& L Graphis's corporate address in 1999 is "17 Wayne Rd., Monroe" which in turn is Starkey's *home address*. (Id.)

Plaintiff argues that a reminder from Starkey to "sign his tax forms" is simply <u>personal</u> advice. However, defendants must counter with (1) is this really all that the e-mail states (e.g. is Starkey just reminding plaintiff to sign a retun or she is providing advice or help?) and (2) *what tax form is Starkey referring to*? The record is already clear that no W-2s were issued for plaintiff in 1998, 1999 and 2000. Therefore, the only "tax forms" left are those that are *business* related. If there are W-2s involved, as Plaintiff did <u>not</u> receive one, the W-2s can only relate to the employees in his business and the e-mail is relevant to this search. If the "tax form" is business related, such as a form 8606 or a Schedule K, then it also relevant to this search. Unfortunately since the plaintiff failed to mention exactly <u>what</u> tax form the plaintiff was being reminded to sign, defendants cannot tell this court how exactly this form(s) relate to plaintiff's businesses.

Lastly, defendants do not agree to redact the personal information as they believe that the personal information is necessary to understand the context of what is being sent and is important in determining how this information should be viewed. Defendants intend to subpoena Starkey to testify at trial and thus Starkey's personal relationship with plaintiff as evidenced by

any e-mails she may have sent with regard to L&L Graphics or Comptroller related work is necessary to determine her credibility.

## IV. CONCLUSION

For the forgoing reasons, the defendants believe that this e-mail is not privileged and is relevant to the issues in the case. Accordingly the defendants request that the Court order plaintiff to produce the document in its entirely to plaintiff.

UNUMPROVIDENT CORPORATION
AND PROVIDENT LIFE & CASUALTY
INSURANCE COMPANY

By  *Helen M. Kemp*
Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: hkemp@rc.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, on this 19th day of February, 2004, to

Chastity A. DaSilva, Esq.
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT  06517

                                                                                   *Helen M. Kemp*
                                                                                   Helen M. Kemp