UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE KALADISH a/k/a<br>ARTHUR L. KALADISH<br>        Plaintiff | : <br> : <br> : <br> : | CIVIL ACTION NO. 301 CV 184 (DJS) |
| V. | : <br> : | |
| UNUMPROVIDENT CORPORATION AND<br>PROVIDENT LIFE & CASUALTY<br>INSURANCE COMPANY<br>        Defendants | : <br> : <br> : <br> : | April 14, 2004 |

**REQUEST FOR *IN CAMERA* REVIEW AND ORDER CONCERNING
DOCUMENTS LISTED ON PRIVILEGE LOG**

The defendants UnumProvident Corporation and the Provident Life & Casualty Insurance Company (hereinafter collectively known as "Provident"), hereby move this Court to issue an order compelling plaintiff to produce certain documents listed on his amended privilege log dated April 1, 2004.

**I.      PROCEDURAL FACTS**

As a result of a search of plaintiff's laptop computer, plaintiff's attorney was given a compact discs ("CD5") representing the documents obtained as a result of the search. Plaintiff reviewed these documents for privileged material and listed several hundred documents that he claimed were either privileged or beyond the scope of the computer search. He sent this log to Provident's counsel in February 2004 who reviewed the documents' descriptions and plaintiff's claims of privilege.

The parties consulted and after such consultation, the plaintiff submitted a second, amended, privilege log dated April 1, 2004. Once again, the parties were able to agree to the

applicability of the privilege with regard to several documents. However, outside of these documents, the parties could not reach further agreement. Accordingly, the lists of documents attached hereto as Exhibit A are the "contested" documents which Provident believes are relevant to its case and for which the plaintiff claims privilege. The documents are divided into files named:

> AOL FILE
> INVOICE FILE
> L & L FILE
> MAIL BOX FILE
> STARKEY FILE

Provident has redacted the names and description of documents contained in the files that it agrees are either privileged or not related to the case at bar.

## II.      DEFENDANTS' CLAIMS OF LAW

### A.      Factual Background

This case concerns a dispute over denial of payment of disability benefits under a disability insurance policy (the "Policy") issued by the Provident Life and Casualty Company in 1989 to the plaintiff, Arthur Lawrence Kaladish. The plaintiff claims to be totally disabled from his occupation as of February 10, 1999 due to cervical injuries sustained in an automobile accident. (Complaint, ¶¶ 6-7.) He made a claim for total disability benefits in April 1999. (Id., ¶ 21.) In addition to other ventures, plaintiff owned and operated L & L Graphics Contractors, Inc., an installation and service company for the commercial printing industry. The gravamen of plaintiff's complaint was that his occupation was that of a service technician (a position requiring significant manual labor) for L & L Graphics and he had been precluded from such work due to his injury.

B. <u>Provident has filed counterclaims in this case and is entitled to conduct discovery on the allegations contained within.</u>

The gravamen of plaintiff's complaint was that his occupation was that of a service technician for L & L Graphics and he had been precluded from such work due to his injury. However, Provident disagrees with this self-serving characterization of Plaintiff's occupation and duties. Provident's position is that while plaintiff may have sporadically performed some manual labor, his occupation was that of a manager, including but not limited to being the President of L & L Graphics, and he was not totally disabled from this occupation. Provident asserts that plaintiff's duties as manager and president of L&L Graphics included all administrative and financial tasks such as accounting, bookkeeping, purchasing, etc.

Provident maintains that at the time plaintiff became disabled (February 1999), he held more than one occupation, for example, in addition to his work with L& L Graphics, he managed a catfish farm, bought and sold real estate, and owned rental property located at 1100 Boston Avenue. Lastly, Provident asserts that during the time Plaintiff claimed to be disabled, he worked either at L&L Graphics or at another business that he incorporated.

Provident does not make these claims lightly. In support of its argument provident notes that during his (alleged) tenure as a "service technician," plaintiff never received a paycheck, "W-2" wages or any income as a service technician. The source of plaintiff's income came not from L & L Graphics, but rather from capital gains from the sale of stocks, and real estate, rental income from the various properties plaintiff managed, and income from other businesses such as a catfish farm in Mississippi. Provident also note that the occupation listed on plaintiff's s personal tax returns was that of "manager" not service technician.

Provident believes that plaintiff had an injury which resulted in a *temporary* disability but by May 1999, he had recovered sufficiently to return to work (and did work). Indeed, on September 13, 1999, plaintiff continued to work in his real estate occupation by organizing and forming the limited liability company "Mountain Heights, LLC" and on November 30, 2000, he formed (and became the president of) "1100 Boston Avenue, LLC". Exhibit B (copies of Secretary of State Filings).

Provident maintains that Plaintiff misrepresented his occupation and duties to obtain benefits as he was in litigation with Chase Manhattan bank. Plaintiff owed the bank a "balloon" payment of approximately $2 million on September 30, 1998 (five months prior to his accident). Plaintiff was unable to pay this amount and was sued by Chase Manhattan in July 1999. Exhibit C (cover sheet to Complaint). By July 1999, Chase Manhattan had obtained an *ex-parte* attachment of certain of plaintiff's properties and accounts. Provident asserts that plaintiff needed the $8,600 disability benefit per month, both as income and as leverage for settlement. The lawsuit settled in September 2000.

Based upon this, and other information, Provident filed several counterclaims in the above captioned matter based upon breach of contract, the breach of the implied covenant of good faith and fair dealing, misrepresentation and negligent misrepresentation. In this counterclaims, Provident has alleged that:

- Contrary to the representations made by and on behalf of Kaladish, he was and is able to work and has been working.

- Kaladish misrepresented his occupation and the duties of his occupation in the submission of his ongoing claims for benefits.

- Kaladish misrepresented his physical condition and his ability to perform the important duties of his occupation(s) in the submission of his ongoing claims for benefits.

- Kaladish misrepresented his business activities in the submission of his ongoing claims for benefits.

- Kaladish failed to cooperate with Provident in the submission of his ongoing claims for benefits by providing false, and/or inaccurate information concerning his purported disability, his occupation, the substantial and material duties of his occupation and his ability to perform the important duties of his occupation(s).

*See* Counterclaims, Count One, ¶¶9-13.

One point of law relevant to Provident's position regarding both this case and the privilege log, is that a "regular occupation" is not a transitory or temporary arrangement that one might perform on an intermittent basis, but rather is the job an individual performed consistently over a course of time prior to the onset of disability. *Dixon v. Pacific Mutual Life Ins. Co.*, 268 F.2d 812 (2d Cir.)(1959); *Peterson v. Continental Casualty Co.*, 77 F. Supp. 2d 420 (S.D.N.Y. 1999); *Klein v. National Life of Vermont*, 7 F. Supp. 2d 362 (E.D.N.Y. 1996); *Dawes v. First Unum Life Insurance Co.*, 851 F. Supp. 118, 122 (S.D.N.Y. 1994). And more importantly, along with this definition of occupation, an insured who has two or more occupations must show that he or she is disabled as to all of them in order to collect under his or her disability policy. Policy, p.4. *Couch on Insurance*, 3d § 147.44; *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275 (D.N.J. 1992); *Brotman v. National Life Ins. Co.*, 1997 WL 442173 (E.D.N.Y. 1997); *Brumer v. National Life of Vermont*, 899 F. Supp. 120 (E.D.N.Y. 1995).

C. <u>The information sought by Provident is relevant to its case and claims.</u>

Based upon its counterclaims, Provident believes that any documents which show that Plaintiff worked in or for L & L Graphics in any capacity or worked at one of his other occupations from 1999 through the present is relevant to this case and their claims. The Federal Rules of Civil Procedure permit a party to conduct discovery regarding *any matter* (not privileged) that *might* lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broad and encompasses any matter that bears on, or that could reasonably lead to another matter that bears on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). This includes matters that relate to the claims or the defenses of any party. Fed. R. Civ. P. 26(b)(1).

"Relevant information includes any matter that is or may become an issue in litigation." *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 n.2 (D. Mass. 1991). All that must be shown for a party to be allowed to obtain discovery is that the information sought might possibly be relevant, or is reasonably calculated to lead to the discovery of admissible evidence. *Ladson v. Ultra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996).

The "benchmark" in determining whether matters are discoverable is Federal Rule of Civil Procedure 26(b)(1). *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 54 (D.N.J. 1985). Rule 26(b)(1) provides, in relevant part,

> parties may obtain discovery regarding any matter, not privileged, *which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party,*

Fed. R. Civ. P. 26(b)(1) (emphasis added); *Driscoll v. Morris*, 111 F.R.D. 459, 460 (D. Conn. 1986). Moreover, the drafters of Rule 26 have cautioned courts "not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Robbins,* 105 F.R.D. at 55, *quoting* Advisory Committee Notes to the 1983 Amendments.

D. <u>As the party asserting a claim of privilege, Kaladish bears the burden of showing that the documents are entitled to protection.</u>

With regard to a privilege log, as the party asserting a claim of privilege, Kaladish bears the burden of showing that each document on its privilege log is entitled to protection. *See First Aviaion Servs., Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 68-69 (D. Conn. 2001) (Dorsey, J.); *see also Hildebrand v. Walmart Stores, Inc.*, 194 F.R.D. 432, 434-35 (D. Conn. 2000). If a party claiming privilege does not present competent proof of circumstances showing that privilege attaches, protection should be denied. *See Hildebrand,* 194 F.R.D. at 434-35. "[W]here a privilege is asserted and then challenged, the burden rests upon the party so claiming to establish that the material is, in fact, not discoverable." *Id.* (*quoting In re Perrier Bottled Water Litig.*, 138, 351 (D. Conn. 1991)).

Pursuant to Rule 26(b)(5), Kaladish is required to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5); *see also* Local Civ. R. 37(a)(1)(requiring that privilege logs list (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, (5) the author of the document, and (5) each recipient of the document).

If a party chooses to provide a privilege log, the Second Circuit requires that the privilege log:

> Identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

*United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. Denied*, 519 U.S. 927 (1996) (*quoting Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Bowne*, 150 F.R.D. at 474 ("The privilege list of Ambase...cannot meet this standard"); *see also Golden Trade, S.r.L. v. Lee Apparel Co.*, Nos. 90 Civ. 6291, 6292, 1667, 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992). "The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege...since the burden of the party withholding documents cannot be 'discharged by mere conclusory or *ipse dixit* assertions." *Id.* (citations omitted).

### III. THE DOCUMENTS IN QUESTION

Provident states its position with regard to the disputed documents by addressing the various files in *seritam*.

#### A. General Objection

A review of the April 1, 2004 privilege log (Exhibit A) shows only "sketchy" information being provided by Kaladish. For example – for many documents such as AOL71 and AOL72 Plaintiff "identifies" the document by simply writing "emails regarding Boston Avenue Industrial Park re: financial update." These vague and unhelpful descriptions do not enable Provident to "assess the applicability of the privilege or protection" as required by Rule 26(b)(5). *See Construction Prods. Research*, 73 F.3d at 474 ("The descriptions and comments [of the privilege log] simply do not provide enough information to support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation"); *see also Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 88-89 (N.D.N.Y. 2003) (finding that a party's log contained "descriptions . . . too meager to help a party, let alone the Court, assess the privilege's applicability").

Provident asserts that as plaintiff has failed to state his materials are privileged with the particularity required by Fed. R. Civ. P. 26(b)(5), he has waived its right to assert any privilege as to the requested information. *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 238 (W.D.N.Y. 1998) (plaintiff waived right to assert privilege).

#### B. AOL File and Documents Concerning Boston Avenue Industrial Park

All of the disputed documents on this file are emails concerning the corporation known as the Boston Avenue Industrial Park Association (BAIPA). Plaintiff was a director of BAIPA in

1998 (the year prior to his accident) and remains a director of the corporation today. (See <u>Exhibit D</u>). Madelyn Starkey, whose name appears in connection with BAIPA held the position of "Comptroller" for at least one of plaintiff's companies.

Plaintiff would have the court believe that these documents only relate to the common charges and have no relevance to the issue of whether or not he has been conducting any type of business since his disability. Provident disagrees and maintains these documents are relevant to its case and defenses.

Provident urges the court to look at *all* the documents regarding BAIP that are contained in the privilege log. While it is true that some of the documents relate to "common charge" issues, numerous emails concern "financial information", proposal for accounting services (by Madelyn Starkey), correspondence to bondholders[1], "QuickBooks" programs used for BAIPA (and ostensibly operated by plaintiff), "customer" balance sheets, tax appeals[2], "customer" transaction lists, cash flow, cash projection and vendor information – in short – all subjects which are indicia of ownership *and of the management* of a corporation.

Additionally, the relationship of Starkey to BAIPA's accounting practices lends further support to the argument that these emails are related to work that plaintiff is performing for his own benefit. Starkey is not plaintiff's spouse; accordingly, her relationship with BAIPA (via plaintiff) indicates a professional or business relationship. Provident also notes the use of the term "customer" rather than tenant or company to describe the file or document in question.

---

[1] Provident believes the issues with regard to the bondholders do not relate to BAIPA but rather to L & L Graphic Contractors. See <u>Exhibit E</u>.

[2] Once again, while plaintiff states that the "tax appeals" documents relate to BAIPA, Provident disagrees and requests that the court take judicial notice of the case entitled <u>Kaladish v. City of Bridgeport, et al.</u>, CV 01-0387614s, Judicial District of Fairfield at Bridgeport filed on November 7, 2001 and resolved by stipulation on December 12, 2003. The docket noted the case type as "Appeals – Taxation." See <u>Exhibit F.</u> If the case involved BAIPA, BAIPA as a corporation, would be the plaintiff in the case.

Lastly, and more importantly, Provident notes that with regard to claims of disability, whether or not plaintiff is *paid* for performing these duties is not as relevant whether plaintiff is *capable* of performing them. In sum, Provident asserts that this information is indeed relevant: (1) to determine plaintiff's occupation at the time of his injury in February 1999; (2) to determine if plaintiff is currently performing the duties of his occupation(s) and (3) to determine if plaintiff is disabled from his performing his managerial duties.

C.  L & L File

1. Provident makes the same argument with regard to the "BAIPA" information located in this file it did relevant to the BAIPA and bondholders documents contained in the AOL file.

2. BMISEC - this document related to the rental of 1100 Boston Avenue – the rental of real estate being an activity which Provident asserts is one of Plaintiff's occupations. Accordingly, it is relevant and should be produced.

3. KEMPltr - there are three documents which are believed to be documents of letters (perhaps drafts) from plaintiff's previous attorney (Attorney Bonsangue) to Provident's attorney. While normally Provident would not be interested in such letters, in an analogous motion, Plaintiff has asserted that an agreed stipulation with regard to the Affidavit of Eric Oram is not valid because Attorney Bonsangue had not secured his client's permission or approval prior to agreeing to the stipulation. These letters could relate to that issue. Unfortunately, because the privilege log, in violation of the rules of practice, does not contain the dates of these letters, it cannot be determined if these letters are relevant to that issue.

4.  <u>L&L7</u> - as this document contains a reference to L&L graphics, it is relevant to this case.

5.  <u>L&L25-26</u> – these documents have been identified simply as "Lawrence Kaladish's personal notes." This description is simply "too meager" to help Provident, let alone the Court, assess the privilege's applicability. Do the "personal notes" contain information about selling press equipment? Purchasing additional rental property? Or, are they truly "personal" and relate to grand children or vacation? Unfortunately, there is not enough information contained on the log to make these assessment.

6.  <u>OSHA-1-1</u> – described as "correspondence by Lawrence Kaladish re: his injuries," Provident cannot see how this information is <u>not</u> directly related to plaintiff's position or occupation. Provident doubts the existence of such an animal as a "personal" letter to OSHA – any letter to OSHA is, *ipso facto*, business related. Additionally, the "injuries" cited by Plaintiff could be "new" injuries received in the performance of his duties after he claimed he was disabled and not working at his occupation. Accordingly, this information is relevant.

7.  <u>Press Removal</u> – once again, as plaintiff claimed his occupation and/or duties related to the buying, selling, repair and *removal* of printing presses, it is difficult to understand how this information is **not** directly related to plaintiff's occupation or business.

8.  <u>SANTOL-1</u> - This document has been identified simply as correspondence regarding "personal matters" and is "too meager" to help Provident, let alone the

Court, assess the privilege's applicability. Do the "personal notes" contain information about selling press equipment? Purchasing additional rental property? Or, are they truly "personal" and relate to grandchildren or vacation? Unfortunately, there is not enough information contained on the log to make this assessment.

D.     Mail Box File

Provident makes the same argument with regard to the "BAIPA" and bondholder information located in this file as it did for the BAIPA and bondholder information located in the AOL file.

E.     Starkey File

Provident makes the same argument with regard to the "BAIPA" and bondholder information located in this file as it did for the BAIPA and bondholder information located in the AOL file.

F.     Quickbooks File

Provident makes the same argument with regard to the "BAIPA" and bondholder information located in this file as it did for the BAIPA and bondholder information located in the AOL file.

## IV.  CONCLUSION

For the forgoing reasons, Provident believes that these documents are not privileged and are relevant to the issues in the case. Provident asserts that Plaintiff has failed to meet his burden of establishing that the documents listed on his log are indeed privileged. Accordingly Provident request that:

- 14 -

1. The Court order plaintiff to produce the documents in question to the Court for an *in camera* review, and

2. Based upon the forgoing legal percepts and explanation, the Court reviews the documents to determine if they are either privileged or relevant. If the Court concludes that the documents are relevant, then they must be produced to the defendants.

UNUMPROVIDENT CORPORATION
AND PROVIDENT LIFE & CASUALTY
INSURANCE COMPANY

By *[signature]*
Helen M. Kemp (ct 14790)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: hkemp@rc.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, on this 14th day of April, 2004, to

Chastity A. DaSilva, Esq.
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517

_____
Helen M. Kemp/