**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LAWRENCE KALADISH a/k/a<br>ARTHUR L. KALADISH : | CIVIL ACTION NO. 301 CV 184 (DJS) |
| Plaintiff, :<br>VS. : | |
| UNUMPROVIDENT CORPORATION AND :<br>PROVIDENT LIFE & CASUALTY :<br>INSURANCE COMPANY : | |
| Defendants. : | APRIL 29, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION
AND CROSS-MOTION TO ENFORCE STIPULATION**

Defendants, UnumProvident Corporation and Provident Life & Casualty Insurance Company (collectively, "Provident"), submit this Memorandum Of Law In Support Of Objection to plaintiff's Motion for Reconsideration and Cross-Motion To Enforce Stipulation.

**I.    OPERATIVE FACTS**

    A.    Background Leading to Motions

By Motion dated August 9, 2002, Defendants had sought to search *all* of Plaintiff's computers for documents which indicated he worked at his occupation, and, in their Reply Brief dated September 17, 2002, also sought to be allowed to examine Plaintiff's computer to determine when the hard drive "crashed" and when and what, if any, files were deleted or lost.

After debate, by Ruling and Order dated October 10, 2002, the Court granted Defendants' Motion to Inspect [Search] Plaintiff's computer. The order allowed said expert to review and

analyze the plaintiff's computer hard drive for documentation from the years 1999-2002 indicating money received or business conducted with regard to his occupation or profession or business activities.

A dispute arose between the Plaintiff and Defendants with regard to the scope of the search, particularly with regard to privileged documents. Pursuant to this dispute, the Defendants filed a Motion to Compel on January 10, 2003 and by Ruling and Order dated February 4, 2003, the Court granted Defendants' Motion to Compel (computer search) and set out the procedure for the inspection of the Plaintiff's computer. Eric Oram, a Computer Forensic Analyst and Trainer with DIBS USA, Inc., performed the actual search and/or forensic examination of computers belonging to the plaintiff from on/about March 4, 2003 until April 30, 2003.

At the conclusion of his search, Oram informed Attorney Helen M. Kemp that he believed the Plaintiff removed or deleted relevant files from the hard drive and then used "WipeInfo" to clean them up so the deleted material could not be retrieved. He also informed defendants' counsel that Plaintiff appeared to have purchased a laptop computer in December 2002 – relevant to this case because Plaintiff was suppose to produce all computers for search and had not produced any laptop.

Defendants' counsel contacted Plaintiff's then counsel Attorney Louis J. Bonsangue about the missing files, password and the laptop computer. Through his attorney, Plaintiff responded by noting that to the "to the best of his recollection, he has never used passwords on any programs on his computer". He also stated that the "HP Simple Trax" file "may be a log of files that were burned onto a CD" but that he "has only used his CD burner to download music files." Most importantly,

Plaintiff admitted that he had these files at one time but noted that the missing documents "were deleted from his computer over time. Sometimes they were part of a year-end process of the maintenance and purging of obsolete files from the hard drive."

### B. Discovery Issues and Motions

The above situation resulted in a flurry of discovery and other motions from both parties Attorney Bonsangue filed a Motion for Contempt and Motion for Immediate Order and Attorney Kemp in turn filed a Motion to Compel and a Motion for Sanctions (May 14, 2003). Attached to Attorney Kemp's motion was the <u>Affidavit of Eric Oram</u> (attached hereto as <u>Exhibit A</u>). In this Affidavit, Oram noted that he found references to directories, files and/or documents that were no longer situated (e.g. appeared to be removed) on the hard drive. Both parties filed their respective opposition papers and reply briefs. Throughout this time frame, defendants urged plaintiff to engage his own computer expert to search the hard drive.

### C. Court Involvement and Intervention

The parties called the court in the hope of scheduling a conference to resolve the discovery issues. On August 1, 2004, Attorneys Bonsangue and Kemp had a telephonic conversation with the court and was informed by the court, in no uncertain terms, that while the court would schedule a conference to resolve the issues, the parties needed to discuss the issues among themselves and to submit proposals regarding these issues to the court[1] prior to the conference. The conference was scheduled for August 27, 2003.

---

[1] The proposals were only to be sent to Chambers: the proposals were not to be filed with the court.

Attorneys Bonsangue and Kemp took the court's instruction under serious advisement and worked to resolve the issues and prepare the proposals as ordered by the court. The parties placed numerous phone calls and emails to each other with regard to the issues. The issue of the stipulation was first proposed by Attorney Kemp to Attorney Bonsangue on August 13, 2003. See Exhibit B (copies of selected emails prior to proposal). On August 15, 2003, Attorney Bonsangue informed Attorney Kemp that he needed to get back to her on the "issue of a stipulation of facts regarding Eric Oram's findings." (Id.) After further debate by the parties proposals are submitted to the court. Exhibit C (copies of parties' Proposals).

On August 27, 2003, the parties spend the better part of *four hours* at court with Judge Squatrito and Nancy Drane, his then law clerk, in resolution of the issues. With regard to the Oram situation, the parties agreed to a stipulation with regard to several (but not all) paragraphs of Oram's Affidavit.

"Evidence" that these issues (deposition and trial testimony) were discussed at the court conference, is found on pages 4 and 5 of "Plaintiff's Proposal for the Resolution of Outstanding Computer Search Issues." (Exhibit C). In plaintiff's proposal, the question is raised as to whether the computer consultant will testify at trial and if so, plaintiff wanted the opportunity to depose him.

Attorney Kemp agreed, that in return for the stipulation, Oram would not testify at trial. Attorney Bonsangue agreed that as Mr. Oram would not testify at trial, he would not to incur the expense of deposing Mr. Oram. The stipulation obviated the need for the parties to travel to Dallas to depose Mr. Oram, for the defendants to obtain (and pay for) an expert report, for Mr. Oram to

travel to Connecticut and testify at trial, and for plaintiff to retain his own expert on the same issue (thus delaying the proceedings even more). Because of these savings, the defendants were willing to give up their position that the plaintiff should pay for the laptop search in its entirety and instead agreed that it would pay half of such costs.

At the conclusion of the conference, the court asked the parties to prepare the actual order. Attorney Kemp sent Attorney Bonsangue a suggested Order on August 28, 2003 and Attorney Bonsangue reviewed and sent back revisions. (Exhibit D copies of selected e-mails after court conference). Attorney Bonsangue sent the revised Order to Nancy Drane on September 3, 2003. Ms. Drane acknowledged receipt of the order and stated:

> "Thanks to you and Helen for your hard work on this Order. I briefly reviewed it, and it looks like it covers everything we discussed last week in Chambers."

(Exhibit D)

After review, the Court entered the order. (See Ruling and Order dated September 3, 2003, §B, ¶1, attached as Exhibit D.) In this Ruling, the Court ordered that the parties prepare, and plaintiff enter into, a stipulation regarding the expert's "computer search" findings as shown in Paragraphs #7, 8, 9, 10 and 11 of Mr. Oram's Affidavit.

D. <u>Current Situation</u>

Pursuant to the order, a stipulation was prepared and sent to Attorney Bonsangue. However, plaintiff obtained new counsel, and Attorney Kemp resubmitted the proposed stipulation to the new counsel. The plaintiff, through his new counsel, now seeks to vacate this Stipulation and has filed a motion to have this Court reconsider its September 3, 2003 Order. A copy of the proposed stipulation is attached hereto as <u>Exhibit F</u>. A comparison of the proposed stipulation with Oram's Affidavit (<u>Exhibit A</u>) indicates it is in compliance with the court's Order.

## I. **ARGUMENT**

The standard for granting a motion for reconsideration is strict. See *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Id.</u> Consequently, the function of "a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'" *Lo Sacco v. City of Middletown*, 822 F. Supp. 870, 876-77 (D. Conn. 1993). A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Resource Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.* 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (internal citations and quotations omitted). Furthermore, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Lastly, a motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency" of the underlying motion. *Lo Sacco*, 822 F. Supp. At 877. The scope of review on motions for reconsideration is limited to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters." *Id.* (quotation omitted).

As plaintiff was represented by counsel throughout these proceedings, and as both parties and the court devoted significant time, effort and resources to resolve the issues, defendants are puzzled how "manifest injustice" results from the Order. In this case, as noted in the facts outlined *supra*, both parties were represented by counsel throughout the proceedings. Attorney Lou Bonsangue represented the plaintiff and the undersigned, attorney Helen Kemp, represented the defendants. Over a period of several weeks, attorneys Bonsangue and Kemp corresponded by telephone, email and facsimile to reach an agreement regarding discovery issues – issues which included Mr. Oram's testimony and the proposed stipulation. Finally, after much back and forth debate, and a four hour court conference, an agreement was reached and ratified by the court via its September 3, 2003 Order.

The plaintiff no longer wishes to be bound by the Order and Stipulation and has filed a Motion for Reconsideration. The plaintiff has not stated a single, valid reason for this Court to reconsider its Order. First, the plaintiff claims that his "right to cross-examine the computer expert, Mr. Oram, will be extinguished or severely limited" if the Order remains in effect. Since one of the

- 7 -

purposes for entering into the Stipulation was to obviate the need to have Mr. Oram testify at trial, it was always anticipated that there would be no cross examination. Thus, it was explicitly contemplated by the parties at the time of the agreement that the stipulation would obviate any need for cross-examination or live testimony at trial. The plaintiff's statement that he will be forced to waive his right to cross-examine Mr. Oram should not provide a basis for this Court to reconsider its Order when this factor was explicitly discussed during negotiations.

The plaintiff's second basis for his motion, that the Stipulation contains information which extends beyond his knowledge and that he therefore cannot verify this information, is similarly groundless. The whole purpose of retaining an expert to search the plaintiff's computer files was based on the fact that it was beyond the ability or knowledge of the parties to do so. The layman's lack of knowledge is the very essence of expert testimony. Additionally, a review of the proposed Stipulation, and the Affidavit upon which it is based, shows that Oram explains the terms that he uses. For example, in Paragraph 4 of the stipulation, he explains the concept of file deletion and in Paragraph 5 explains what he means by a "wiping program" and how these programs work. Lastly, plaintiff has had since May 15, 2003 (when a copy of the Affidavit was sent to the plaintiff) to review, analyze and evaluate the statements contained in Mr. Oram's Affidavit. He has had since May 15, 2003 to engage his own computer expert to refute the findings or, in the alternative, to gain the understanding he claims he requires. As such, there is no basis for plaintiff's claim of lack of knowledge regarding Mr. Oram's affidavit or the Stipulation.

The plaintiff's final basis for his motion, that the Stipulation will jeopardize the plaintiff's case because it will strip his ability to challenge Mr. Oram's conclusions and findings, is again without any merit. First, plaintiff has not explained how he will "challenge" Oram's conclusions and findings in light of the fact that he *never requested a copy of the mirror image* nor, although given opportunity to do so, engaged an expert of his own with regard to Oram's computer search. Without a copy of the mirror image, and an expert to search it, plaintiff cannot reasonably and rationally expect to challenge Oram's findings. Additionally, the plaintiff himself in an Affidavit to the court has admitted that these files were once on the hard drive and admitted that he used the "Wipe Info" program ostensibly as part of a regular file purging process. *See* Kaladish Affidavit, Exhibit A, "Opposition to Defendants' Motion to Compel and Motion for Sanctions."

It is important to note for purposes of this Objection that the Stipulation, based upon Mr. Oram's Affidavit, was not simply thrust upon an unsuspecting plaintiff by the defendants. Plaintiff knew at least two weeks prior to the August 27th status conference that such a stipulation was being proposed by the defendants. The plaintiff, with the advice of counsel, had the opportunity to review and make changes to the proposals submitted to the court and the suggested court order. The final documents reflect the joint efforts of the plaintiff and defendants to work together toward resolution of the issues. As such, this Court should not void its September 3, 2003 Order.

The plaintiff's claims are wholly undermined by the primary purpose for the Stipulation itself; to avoid the need for the parties to travel to Dallas to depose Mr. Oram, for Mr. Oram to travel to Connecticut and testify at trial, and for plaintiff to retain his own expert on the same issue. The

court approved the Stipulation propounded by the parties. A "district court has not only the power, but the duty to enforce [a] stipulation which it had approved". *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977); see *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). "The court-approved agreement of the parties is to be construed according to principles governing construction of contracts in general." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 43 L. Ed. 2d 148, 95 S. Ct. 926 (1975). Lack of foresight does not render an agreement invalid. *See Investors Ins. Co. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 105 (2d Cir. 1990).

In the instant case, the plaintiff has not provided this court with a single, valid reason to grant his Motion for Reconsideration. The plaintiff cited no caselaw which indicates that the court's September 3, 2003 Order was inappropriate or incorrect. Furthermore, the plaintiff has not provided this Court with any information that the parties did not consider during the process or at the conference, or that the Court overlooked in making its Order. Even if it was true that plaintiff could have made additional argument but did not, the lack of argument should not affect the court's order as it is Plaintiff's duty to appropriately argue in support of his position. See *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("Just as a district court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (internal citation omitted).

In short, the plaintiff is displeased with the stipulation because he perceives it as unfavorable to his case and thus has changed his mind about the entering into the stipulation. He is now looking to have this Court reverse a properly entered Order with no valid basis for doing so. Accordingly his motion for reconsideration should be denied because a motion for reconsideration is not a "second bite at the apple" for a party dissatisfied with a court's ruling. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Furthermore, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits." *Id*.

Defendants agree that "reconsideration of a previous ruling is appropriate ... to prevent manifest injustice." *MM Global Services, Inc. v. Dow Chemical Co.*, 2004 WL 556577 (D. Conn. 2004), citing *U.S. v. Sanchez,* 35 F.3d 673, 677 (2d Cir. 1994). However, in this case and under these circumstances, the only manifest injustice would be *to the defendants* if plaintiff's motion was granted. If the plaintiff's motion is granted, defendants would have to pay for Oram to prepare an expert's report, would have to file the appropriate motion(s) in court, prepare Mr. Oram for trial and pay for Mr. Oram to travel to Connecticut and testify at trial. Issues that the parties and the court believed resolved would be reopened and additional time, effort and expenditures would be incurred by all parties. Litigation would be prolonged.

Lastly, the defendants ask the court to look at the time and effort expended by the parties (and the court) to resolve these discovery issues. The sampling of emails provided by the defendants indicates that the agreement with regard to the issues was not lightly made. Both parties had ample

opportunity to review, examine, analyze and discuss the various issues among themselves and in front of the court. Based upon the agreement (and argument) of counsel, the court issued a well reasoned order. Accordingly, the court should not revise that order, without good cause, six months after the defendants relied on that order with regard to their litigation strategy.

## II.     CONCLUSION

Because plaintiff is merely taking issue with the court's resolution of the various discovery motions and issues, and does not point to any facts or controlling law in his memorandum that the that the court overlooked, he fails to meet the threshold requirement for a motion for reconsideration. As the plaintiff, who was represented by counsel in this matter, cannot show any "manifest injustice", the Court should summarily enforce its September 3, 2003 Order and the Stipulation made a part thereof. For all of the foregoing reasons, the Defendants, UnumProvident Corporation and Provident Life & Casualty Insurance Company, respectfully request that this court deny the plaintiff's Motion for Reconsideration and grant the defendants' Cross-Motion to Enforce Stipulation.

DEFENDANTS,
UNUMPROVIDENT CORPORATION AND
PROVIDENT LIFE & CASUALTY
INSURANCE COMPANY


By *Helen M. Kemp*
Helen M. Kemp (ct14790)
Lisa K. Titus (ct22077)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
Email: hkemp@rc.com


## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, certified mail, return receipt requested, on this 29th day of April, 200, to

Chastity A. DaSilva, Esq.
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517


*Helen M. Kemp*
Helen M. Kemp