**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAWRENCE KALADISH a/k/a | : | CIVIL ACTION  NO. |
| ARTHUR L. KALADISH, | : | 3:01 CV 184 (DJS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNUMPROVIDENT CORPORATION | : | |
| and | : | |
| PROVIDENT LIFE & CASUALTY | : | |
| INSURANCE COMPANY, | : | JULY 21, 2004 |
| Defendants. | : | |

## MEMORANDMUM IN OPPOSITION TO MOTION TO PRECLUDE EXPERT TESTIMONY

Plaintiff, Lawrence Kaladish a/k/a Arthur L. Kaladish, hereby submits this memorandum in opposition to Defendants UnumProvident Corporation and Provident Life & Casualty Company's (hereinafter collectively referred to as "Provident"), Motion to Preclude Expert Testimony of Plaintiff's expert witness, Dr. Gerard Girasole, for the following reasons:

1.      Plaintiff's prior counsel previously submitted to Defendants, in compliance with Federal of Civil Procedure 26(a)(2)(B), the prepared and signed written report by expert witness, Dr. Gerard Girasole.

2.      Plaintiff by letter dated June 29, 2004, queried Defense counsel as to what, if anything, they felt was lacking from Dr. Girasole's expert report, and Plaintiff <u>received no response</u>.

3.    Defendants' motion to preclude Dr. Girasole's expert testimony should be denied because the tentative trial date of September is still two months away, and therefore, no prejudice exists toward the Defendant for this witness.

4.    Notwithstanding the aforementioned reasons, an updated expert report from Dr. Girasole is currently necessary in light of the Plaintiff's July 2004, knee surgery related to the disability at issue in this case.

I.    **Factual Introduction**

This case involves a personal own occupation disability income policy purchased by Plaintiff from Defendants in September 1989. In February 1999, Plaintiff was involved in a motor vehicle accident which caused Plaintiff to become disabled as a result of cervical injuries. Subsequently, Defendants began to pay Plaintiff disability income pursuant to Defendants' disability insurance policy. At the time Plaintiff became disabled, his occupation was that of a service technician in the printing industry. Thereafter, Defendants terminated Plaintiff's disability benefits starting July 11, 2000, alleging that Plaintiff was not precluded from performing the duties of his occupation.

In March 2001, the Plaintiff underwent a cervical fusion as a result of the injuries he sustained in February 1999. Thereafter, Defendant reinstated Plaintiff's disability from March 2001 to date. However, Plaintiff has not been

paid any disability benefits for the period of July 2000 through March 2001. In addition, Plaintiff recently underwent knee replacement surgery on July 2, 2004 related to the motor vehicle accident. Defendant's claim that no disability benefits are currently owed.

II.    **Argument**

1.    PLAINTIFF HAS ALREADY SUBMITTED TO DEFENDANTS, IN COMPLIANCE WITH F.R.C.P 26(A)(2)(B), THE PREPARED AND SIGNED WRITTEN REPORT BY EXPERT WITNESS, DR. GERARD GIRASOLE.

F.R.C.P. 26(a)(2)(B) controls disclosure of expert witnesses. In relevant part, F.R.C.P. 26(a)(2)(B) requires that:

> disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

F.R.C.P. 26(a)(2)(B). As opposing counsel points out in their Motion to Preclude Expert Testimony, the expert's report "is intended to set forth the substance of the direct examination." F.R.C.P. 26 advisory committee's note. Although succinct, Plaintiff has fairly complied with F.R.C.P. 26 (a)(2)(B). The report was

prepared and signed by Dr. Girasole, and contains a complete statement of all opinions to be expressed, and the basis of those opinions. The numerous medical reports previously provided to Defense counsel provide all of the required data and other information considered by the witness in forming his opinion.

While Defendant attacks the report as being a "bald conclusion" that does not amount to a complete written report, this is merely defense counsel's subjective opinion as to what constitutes a report under F.R.C.P. 26(a)(2)(B). In fact, Defense counsel admits to receiving various medical reports, but claims that none fit the F.R.C.P. 26(a)(2) description of an expert report. This assertion is made without any supporting case law on point. In fact defense counsel cites only to <u>St. Paul Fire and Marine Ins. Co. v. Health Fielding Ins. Broking Ltd.</u>, 1996 WL 19028, *11 (S.D.N.Y. Jan. 17, 1996). <u>St. Paul Fire</u>, has nothing to do with personal injury or medical doctors, but rather deals with an insurance company's action against reinsurance broker alleging fraud and negligence in a treaty retrocession insurance contract. <u>Id.</u> Accordingly, Defendants' Motion to Preclude Dr. Gerald's expert testimony should be denied because the report is in compliance with F.R.C.P. 26(a)(2)(B).

2. <u>WHEN PLAINTIFF BY LETTER QUERIED DEFENDANTS' COUNSEL WHAT THEY FELT WAS LACKING IF ANYTHING FROM DR. GIRASOLE'S EXPERT REPORT, PLAINTIFF RECEIVED NO RESPONSE.</u>

In a letter dated June 29, 2004, one day after Defendant's Motion to Preclude Expert Testimony was filed, Plaintiff's counsel promptly requested that Defendant inform them of what they thought was missing within Dr. Girasole's expert report so that any accommodations could be made at once. See Letter to Defendant dated June 29, 2004 with Girasole attachments, attached hereto as *Exhibit A.* This request to defense counsel came after Plaintiff's expert report had been re-sent to Defense counsel per their request, along with two other reports from Dr. Girasole which for clarity had been re-sent as attachments with the letter of June 29, 2004. That letter also specified that a supplemental report from Dr. Girasole's office would be sought after Plaintiff recovers from his recent knee surgery.

In addition, the letter stated the following:

> In order to avoid further frivolous motions, please indicate any way in which the previous reports of Dr. Girasole are insufficient. If there is a way in which these reports do not technically comply with the Federal Rules, I am sure it can be easily remedied without the necessity of time consuming and expensive motion practice.

To date, Plaintiff has never received a specific response, and thus, can only presume that Defendant is unwilling to work this out amicably. Defendant's motion to preclude Dr. Gerald's expert testimony should therefore be denied.

3. THE MOTION TO PRECLUDE DR. GIRASOLE'S EXPERT TESTIMONY SHOULD BE DENIED BECAUSE THE TENTATIVE TRIAL DATE OF SEPTEMBER IS STILL TWO MONTHS AWAY; THEREFORE, NO PREJUDICE EXISTS TOWARD THE DEFENDANT FOR THIS WITNESS.

There is still sufficient time for the expert report related to Dr. Girasole to be amended without prejudice to the Defendant due to a tentative trial date of September, 2004.

With regards to an untimely F.R.C.P. 26(a)(2)(B) disclosure, the court in Dippel v. Farrell Lines Inc., held that the report or testimony would not be excluded simply for allowing the deadline on expert discovery to pass because defendant suffered no prejudice by the late disclosure. Dippel v. Farrell Lines Inc., 2004 WL 369140, *2 (S.D.N.Y. Feb. 27, 2004).  The court justified their holding by stating:

> When determining whether to modify, or permit a deviation from a scheduling order, the Court should consider, among other things, whether any prejudice will result, Ismail v. Cohen, 706 F.Supp. 243, 255 (S.D.N.Y.1989), and whether "the interests of justice make such a course desirable." Madison Consultants v. Federal Deposit Ins. Corp., 710 F.2d 57, 62 n. 3 (2d Cir.1983). "The Court in making such a determination must balance the need for doing justice on the merits between the parties (in spite of the oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." Ismail, 706 F.Supp. at 255 (internal quotations omitted).

Dippel v. Farrell Lines Inc., 2004 WL 369140, *1 (S.D.N.Y. Feb. 27, 2004).

In the present case, there is fortunately still considerable time to correct any perceived error before September's trial without causing any prejudice to the Defendant.  For that reason, even if the court determines that the report previously submitted is insufficient, Defendant's motion to preclude expert

testimony should be denied and a deadline should be set for additional disclosure.

### 4. THE PRECEDING REASONS ARE ALL SUPERCEDED BY THE FACT THAT A NEW EXPERT REPORT FROM DR. GIRASOLE WILL BE NECESSARY IN LIGHT OF THE PLAINTIFF'S RECENT SURGERY ON HIS KNEE.

Defendant's motion to preclude expert testimony should be denied because it will be necessary to supplement Dr. Girasole's report concerning Plaintiff's recent July 2004 knee surgery. Dr. Girasole will issue another comprehensive expert report in compliance with F.R.C.P. 26(a)(2)(B). This report will accordingly supercede the previous submitted expert reports. Defendant's motion to preclude expert testimony should consequently be denied.

## III. CONCLUSION

For all of the foregoing reasons, the plaintiff Lawrence Kaladish respectfully requests that the court deny the Defendants' Motion to Preclude Expert Testimony.

THE PLAINTIFF,
LAWRENCE KALADISH a/k/a
ARTHUR L. KALADISH

By: _____
Tracy Alan Saxe, Esq.
Fed. Bar No. ct06031
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax (203) 287-8847

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE KALADISH a/k/a | : | CIVIL ACTION  NO. |
| ARTHUR L. KALADISH, | : | 3:01 CV 184 (DJS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNUMPROVIDENT CORPORATION | : | |
| and | : | |
| PROVIDENT LIFE & CASUALTY | : | |
| INSURANCE COMPANY, | : | JULY 21, 2004 |
| Defendants. | : | |

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent via facsimile on this 21st Day of July, 2004 to the following counsel of record:

Helen M. Kemp, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT  06103

Tracy Alan Saxe



**SAXE DOERNBERGER & VITA, P.C.**

ATTORNEYS AND COUNSELLORS AT LAW

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELEPHONE (203) 287-8890
FACSIMILE    (203) 287-8847
*www.sdvlaw.com*

Tracy A. Saxe

tas@sdvlaw.com

**(860) 275-8299**
**VIA FACSIMILE WITHOUT ENCLOSURES**
**AND FIRST CLASS MAIL WITH ATTACHED**
**ENCLOSURES**

June 29, 2004

Helen M. Kemp, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103

Re:    Lawrence Kaladish v. UnumProvident Corp., et al

Dear Attorney Kemp:

I am in receipt of your motion to revise the scheduling order. Please review our correspondence over the past two weeks and immediately retract the claims you make that I have consented to the granting of your motion. I have never seen any proposed motion to extend the scheduling order, nor have I consented to this motion. The correspondence is clear that I offered to work out a mutually agreeable scheduling order for both sides' proposed depositions. In fact, I emailed you on Saturday, to let you know that I was not available to talk on Monday, but would be available to discuss a mutually convenient and appropriate schedule. No call or proposal was received.

In regards to the depositions of Daniel Ferreira and Dr. Francis Schifo, it is my understanding that no proper service for the above-referenced deponents was made under Federal Rule 45. After speaking with Donna at Dr. Schifo's office, it became quite clear that this subpoena was not in fact served in hand. I am sure you have reviewed the return of service and have been well aware of this, but declined to tell me.

In the case of Daniel Ferriera the same would hold true. The subpoena was served upon his soon to be ex-wife, at his former residence. The Federal Rules clearly specify that service of the subpoena must be made personally. Clearly, this has not been the case in either the Daniel Ferriera or Dr. Francis Schifo Subpoenas' Duces Tecum. Strangely, while you clearly knew, or should have known, that no witnesses

Helen M. Kemp, Esq.
June 29, 2004
Page 2

would be present, you rejected a request for postponements based on Larry Kaladish's medical necessity.

Please note we have not filed any Motions for Protective Order for Dr. Schifo or Daniel Ferreira's depositions. In fact, you have not properly scheduled any of these depositions in that no deponents have agreed voluntarily to appear for their depositions, nor have you compelled them to do so by proper service of a subpoena.

A lot of aggravation could have been avoided if you had simply told me that you had no witnesses lined up, but, in fact, you chose to lead me to believe that your depositions of Daniel Ferreira and Dr. Schifo were going forward, because you claimed they were under subpoena.

Although, I have repeatedly held out an olive branch and pleaded for a practical approach in accommodating each others' reasonable discovery needs, you decided to pursue an agenda which might result in you obtaining long neglected discovery and simultaneously resulting in the foreclosing of Mr. Kaladish's discovery attempts. Your refusal to come to an agreement is obviously based upon a perceived tactical advantage.

I am not opposed to further discussion as to the modification of the current scheduling order but, we will have to come to an agreement as to the discovery that Mr. Kaladish is seeking.

In response to your June 29, 2004 letter regarding Mr. Kaladish's knee replacement surgery. In your letter you state that Dr. Girasole is performing the surgery and in fact that there is no record of my client having such surgery or of Dr. Girasole performing the surgery. In fact, Dr. Girasole's partner, Dr. Boone has scheduled the total knee surgery.

If you would refer to your August 26, 2003 letter in which you provided plaintiff's former counsel with a complete record of Larry Kaladish's Post-Surgery records from UnumProvident claims department, you will note that a report has been generated referencing Mr. Kaladish's need for knee replacement surgery. Please also refer to the report dated June 25, 2001, where he was examined by Peter S. Boone for his knee problems and need for surgery *(attached as Exhibit A)*. In this report Dr. Boone *recommends a knee replacement* to be performed and also states "He subsequently had an exacerbation over the past year or two and now he is in constant discomfort".

I find it very unlikely that his knee problem has taken you by surprise, as you claim, since this record was part of the claim file produced by your client. We have not received any recent update of your client's claim file. Please update your discovery responses pursuant to the Federal Rules of Civil Procedure at your earliest convenience.

I am also surprised to receive your motion to preclude the testimony of Dr. Girasole. In addition to the report recently re-sent, you have two other reports from Dr. Girasole which for clarity are re-sent herewith *(attached as Exhibit B)*. In addition, a

Helen M. Kemp, Esq.
June 29, 2004
Page 3

supplemental report from Dr. Girasole's office will be sought after Mr. Kaladish recovers from his upcoming surgery. Upon receipt, a copy will be forwarded to you.

In order to avoid further frivolous motions, please indicate any way in which the previous reports of Dr. Girasole are insufficient. If there is a way in which these reports do not technically comply with the Federal Rules, I am sure it can be easily remedied without the necessity of time consuming and expensive motion practice.

Please advise whether you are in favor in working out an agreeable understanding of the depositions and as to the extension of the Joint Trial Memorandum.

Very truly yours,

Tracy Alan Saxe

TAS/caa
cc: Lawrence Kaladish



# The Orthopaedic & Sports Medicine Center

888 WHITE PLAINS ROAD    TRUMBULL, CT 06611    203 268 2882    FAX: 203 452 3099
1055 POST ROAD    FAIRFIELD, CT 06430    203 254 1055    FAX: 203 319 3367
http://www.osmcenter.com • EMAIL: sport@osm-ct.com

STUART C. BELKIN, M.D.

MICHAEL R. REDLER, M.D.

PETER S. BOONE, M.D.

GERARD J. GIRASOLE, M.D.

DAVID J. MARTIN, M.D.

JAMES I. SPAK, M.D

MARC J. WARMAN, M.D

MICHELLE PAGLIARO, D.C.

STEVEN P. FRIES, P.A.-C.

ROLANDO R. LOPEZ, P.A.-C.

LEE ANN DANGELO, CHE
Practice Administrator

Orthopaedic Surgery

Sports Medicine

Hand Surgery

Spine Surgery

Total Joint
Reconstruction

Foot & Ankle
Surgery

Osteoporosis
Testing Center

Physical Medicine
& Rehabilitation

Chiropractic Care

April 13, 2001

Attorney Louis Bonsangue
Jacobi, Kappel & Case, PC
300 Bic Drive
Milford, CT 06460-3055

Re: Lawrence Kaladish a/k/a Arthur L Kaladish
DOB: 2/24/45

Dear Attorney Bonsangue:

The following is a response to your letter concerning
Mr. Kaladish.

1) Mr. Kaladish underwent an anterior cervical
discectomy with interbody fusion on March 26, 2001 at
St. Vincent's Hospital.

2) The second question regarding the need for the
surgery is as a result of his original accident.

3) Yes, Mr. Kaladish in the postoperative period is
maintained to be totally disabled.

If you require any further assistance please do not
hesitate to ask.

Sincerely,

Gerard J. Girasole MD

SMS

000378



# The Orthopaedic & Sports Medicine Center

888 WHITE PLAINS ROAD
1055 POST ROAD

TRUMBULL, CT 06611      203 268 2882      FAX: 203 452 3099
FAIRFIELD, CT 06430      203 254 1055      FAX: 203 319 3367
http://www.osm-ct.com   •   EMAIL: sport@osm-ct.com

STUART C. BELKIN, M.D.

MICHAEL R. REDLER, M.D.

PETER S. BOONE, M.D.

GERARD J. GIRASOLE, M.D.

DAVID J. MARTIN, M.D.

JAMES I. SPAX, M.D

MICHELLE PAGLIARO, D.C.

STEVEN P. FRIES, P.A.-C.

MARY L. WARNER, P.A.-C.

LEE ANN DANGELO, CHE
Practice Administrator

Orthopaedic Surgery

Sports Medicine

Hand Surgery

Spine Surgery

Total Joint
Reconstruction

Foot & Ankle
Surgery

Osteoporosis
Testing Center

April 10, 2000

Ms. Connie Carr, ALHC
UNUM Provident Corporation
One Fountain Square
Chattanooga, Tennessee  37402

Dear Ms. Carr:

I received your letter concerning Arthur Kaladish and I would further answer the questions you had regarding his employment.

Question #4 asks for limitations to work as a Service Technician and Question #5 asks when Mr. Kaladish will resume his occupation.

I feel both of these can be answered at once.  This patient is completely disabled from his fracture.  I do not think he can tolerate working as a Service Technician.  He has marked loss of range of motion and severe pain with range of motion, which would negate his ability to perform his prior duties and I think we should consider him total disabled from his prior employment.

If I can be of any further assistance, please do not hesitate to ask.

Sincerely,

Gerard J. Girasole, M.D.

GJG/lmb

The Orthopaedic &
Sports Medicine
White Plains Road
Trumbull CT 06611 203•268-2882
1055 Post Road
Fairfield CT 06430 203•254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Gerard J. Girasole, M.D.
Michelle Pagliaro-Haywood, D.C.
Steven P. Fries, P.A.-C., ATC

NAME: Arthur Kaladish          PAGE: /

2/24/99   Surgery: 3/3/99 @ 7:45 AM  SVH /OJO
w/ Dr. Mintz  ORF cervical Spine - Kathy  form fixed

(NB)

MAR 15 1999  OK

MAR 16 1999

**HISTORY:**   Arthur is now 3 1/2 weeks in a halo. The patient was put in traction on the 26th of February. We will use this date as the date of starting treatment. He is doing well. He is ambulating without any complaints. He complains of an occasional pain in the back of his neck, but he has no neurological complaints and is tolerating the halo.

**PHYSICAL
EXAMINATION:**   The pins are all clean. The patient neurologically is 5 out of 5 in all muscle groups and sensory exam is symmetrically intact. The halo vest was adjusted. The pin sites appear to be tight. They are clean. There is no signs of loosening and I went over the complete halo to tighten all the bolts and everything is completely tight.

**RADIOGRAPHS:**   X-rays show he has a 50% translation of C2 adens on to the body of C2, however this has not changed. There is no angulation.

**PLAN:**   I am going to continue him in a halo for at least 2 1/2 to 3 months. At that point I will take him out of the halo. I will see him back in one week time, just to get another x-ray and assure that the pin sites are clean and after that the intervals will be longer. GJG/mt  cc: Dr. Abraham Mintz, Dr J Fitzgibbons

MAR 24 1999

**HISTORY:**   Arthur had called me complaining of some clicking in his neck but he has no onset symptoms. The only symptoms he gets is occasional numbness or radiating in more of the 1st and 2nd digits of his right hand.

**(OVER)**



The Orthopaedic &
Sports Medicine
888 White Plains Road
Trumbull, CT 06611 203●268-2882
1055 Post Road
Fairfield, CT 06430 203●254-1055

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James L. Spak, M.D.
Gerard J. Girasole, M.D.
Michelle Pagliaro-Haywood, D.C.
Steven P. Fries, P.A.-C., ATS

PAGE: 2

NAME: Kaladish, Arthur

## March 24, 1999 - (CONTINUED)

**PHYSICAL EXAMINATION:** From the clinical standpoint he is ambulating without assistance. His pins are all clean and intact. There is no lucency of the halo and the halo is intact. Neurological standpoint he is 5 out 5 in all muscle groups. I do not entertain any numbness in the arms and he has no abnormal reflexes.

**RADIOGRAPHS:** X-rays show that there is no change in the fracture of C2. He definitely has spondylosis at C5-6.

**IMPRESSION:** The patient on the MRI in the hospital showed he had a herniated disc at 4-5 and 5-6. This could answer why he has this pain in his wrist, however this is something we will wait and see and have him get over the halo treatment.

As far as his cervical spine it really shows no change. At this point he is now almost 4 1/2 weeks in the halo.

**PLAN:** I will see him back in 2 1/2 weeks. At that point we will take additional x-rays and the total time in the halo will be 2 1/2 to 3 months. GJG/mt

cc: Dr. Mintz, cc: Dr. Fitzgibbons

3-30-99 xanax 1mg 1 TID 50# GJG/LR
3/30/99 Celebrex 200mg 15d    CVS 261-1185

APR 12 1999
/12 xanax 1mg #50 1 Tid
Celebrex 200mg #30 1 qd

**HISTORY:** Arthur is now over 6 weeks from being in the halo. He has been in traction since the 26th of February. He is doing well over all. He describes an audible click he heard in his neck but he denies any real pain in his arms. He had pain in the pin sites but there has been no drainage and he has had pain in the neck area, just generalized muscle pain.

**PHYSICAL EXAMINATION:** The halo is intact. All bolts and nuts are tight. The pins are clean. There are no signs of erythema, no signs of loosening. (CONTINUED)



The Orthopaedic
Sports Medicine
888 White Plains Road
Trumbull, CT 06611 203•268•2882
1055 Post Road
Fairfield, CT 06430 203•254.1055

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James B. Spaks, M.D.
Gerard J. Girasole, M.D.
Michelle Pagliaro-Haywood, D.C.
Steven P. Fries, P.A.-C., ATC

NAME: KALADISH, Arthur

PAGE: 3

### April 12, 1999 (CONTINUED)

Neurologically he is 5 out of 5 in all muscle groups in the upper extremity.

RADIOGRAPHS: X-rays show that the C2 fracture is starting to heal. There is no change in it's position. He is getting dis-use osteopenia and he also had the C5-6 which has a known herniated disc from MRI, appears to be more degenerative but over all there is no change.

PLAN: I will keep him in the halo. I will see him back in approximately 4 weeks. At that time I will plan to take him out of the halo. I will put him in a hard collar and evaluate him to see he is from a stability standpoint. I think at that point the fracture will be well healed. GJG:dc  cc:A.Mintz, M.D.  cc:James J. Fitzgibbons, M.D.

APR 29

Arthur returns for follow up of his C2 fracture of the cervical spine.

He is reporting no problems. He has been symptomatic now for 2½ months. He has been in a halo.

Physical examination is limited to the cervical spine and halo. Pin tracts are clean, dry, and intact. Neurocirculatory status is intact. There is no tenderness about the cervical spine. He has an normal gait. He is able to heel to heel walk, toe to toe walk, and heel to toe walk without any difficulty. Sensation is 5/5. Motor strength is 5/5. Neurocirculatory status is intact.

Radiographs, AP lateral and odontoid views of the cervical spine out of the halo, reveal fracture to be stable and non displaced with satisfactory healing.

Impression: As above.

Plan: Recommendation is made for the patient to be removed from his halo. Pin tracts were covered with Bacitracin ointment. He was placed in a soft cervical collar. Patient understands the problem clearly. He returns to office in 3 weeks for re-evaluation and repeat x-rays, AP, odontoid and lateral views of the cervical spine. SPF:GJG:cb

MAY 17 1999

Arthur is now 2 months and 3 weeks from his fracture. He has been out of the halo now for almost 2 weeks. He says he really has no complaints. He occasionally gets neck pain when he lifts anything heavy. **(OVER)**

The Orthopaedic ... ... ...
Sports Medicine
888 White Plains Road
Trumbull, CT 06611 203•268-2882
1535 Post Road
Fairfield, CT 06430 203•254-1055

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Booner, M.D.
David J. Martini, M.D.
James I. Spak, M.D.
Gerard J. Girasole, M.D.
Michelle Pagliaro-Haywood, D.C.
Steven P. Fries, P.A.-C, ATC



NAME: KALADISH Arthur

## May 17, 1999 (CONTINUED)

On exam he obviously has decreased ROM but neurologically he has no change in his neurologic status.

X-rays today consisting of flexion-extension lateral films show there is no movement of the dens or the fracture and it appears to be all healed.

PLAN: We will D/C his collar, start to be more active and we will let pain be his guide. If anything should change he will notify the office, otherwise I will see him back in 3 weeks. GJG:dc  cc:Dr.Fitzgibbons.

### JUN 0 9 1999

HISTORY: He has a fracture of C2.

HISTORY OF
PRESENT ILLNESS: His fracture was 2/15/99. For over three and one-half months since his fracture he has been out of the halo and has been in physical therapy. Arthur tells me he has a lot of pain in the suboccipital area of his neck and it radiates down. He really doesn't complain of any numbness.

PHYSICAL
EXAMINATION: Patient has poor range of motion and he has pain with any flexion and extension. From a neurological standpoint he is completely intact.

RADIOGRAPHS: X-rays today show there is no change in the alignment of his cervical spine, however, it shows that it looks like there is increased sclerosis which would hopefully denote healing, however, his clinical exam I think he would be much more improved than he is now. It is for that reason I'm going to order a CT scan with 3D reconstruction to evaluate the healing of the fracture at this level. I will wait for the results of this test. GJG:dl  cc: Abraham Mintz, M.D.

9/10/99  NET  cervical spine  SVH  9/13/99 @ 7:00pm  OSO (HB)
              no precert per Brenda

The Orthopaedic &
Sports Medicine Center
888 White Plains Rd.
Trumbull, CT. 06611  203·268-2882
1055 Post Rd.
Fairfield, CT. 06430  203·254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Gerard J. Girasole, M.D.
Marc J. Warman, M.D.
Michelle Pagliaro Haywood, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C

PAGE:

Kaladish, Arthur L.    9/05/00

Arthur returns.  He still has significant pain with range of motion of his neck.  It is all in the upper part of his spine.  This is where his complaints are; really in the upper cervical spine.  Neurologically, he has no new complaints in the arms.

PHYSICAL
EXAMINATION:    Patient, from a functional range of motion, has lost 40% of his extension.  He is able to flex almost fully.  He lost at least 75 to 80% of his rotation to the right and he has about 50% rotation to the left.  With range of motion, especially rotation, he has pain localized to the base of his skull or in the C1-C2 area.  Neurologically, he is unchanged.

X-RAYS:    Show that he has a malunion of the dens fracture.  He really has no widening of the ADI, but the areas where he had the fractures appear to be healing, but obviously malpositioned.

As I explained to the patient, the treatment options for him would be to do a C1-C2 fusion.  In the past we could not do this because of the gross fractures through C1-C2, but at this time I would order a CAT scan.

I make it clear to the patient and to his employment, there has been some discrepancy.  The patient is disabled from his problem.  It does not preclude him from doing yard work, but any kind of strenuous activity I would not feel he is suitable to do.  There has been questioning whether he has done yard work, which he feels is minimal, and I have received letters from his Insurance Company saying that they have observed him raking, shoveling, swinging a pickax, lifting and carrying heavy items.  There is much discrepancy between the Insurance Company and the patient, but from a spine standpoint this patient is disabled from his severe fractures at C-1 and C-2.

I will see the patient back in several months' time.  ·cc:    Patient
GJG/lmb

000448

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611  203•268-2882

1055 Post Road
Fairfield, CT 06430  203•254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Marc J. Warman, M.D.
Michelle Pagliaro Haywood, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.
Niki Bertrand, P.A.-C.

Arthur L. Kaladish   04/11/01

DX:   Mr. Kaladish is status post surgery at St. Vincent's for an anterior cervical discectomy C4-5 and C5-6 with fusion and plating.

S:   The patient has been doing well.

O:   He ambulated to the clinic with a non-antalgic gait.  His neurological exam is grossly intact, though he states that he feels that he has increased numbness in his right hand.  However, on gross sensory exam, it appears to be grossly intact.

R:   The patient's x-rays show the cornerstone grafts in good placement, and the plate and screws in good alignment and in place.

P:   The patient will return to the clinic in four weeks' time to follow up with Dr. Girasole.
RRL:GJG:dfc

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611   203•268-2882

1055 Post Road
Fairfield, CT 06430   203•254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Marc J. Warman, M.D.
Michelle Pagliaro Haywood, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.
Niki Bertrand, P.A.-C.

Arthur L. Kaladish   04/11/01

DX:    Mr. Kaladish is status post surgery at St.
Vincent's for an anterior cervical discectomy C4-5
and C5-6 with fusion and plating.

S:     The patient has been doing well.

O:     He ambulated to the clinic with a non-
antalgic gait.  His neurological exam is grossly
intact, though he states that he feels that he has
increased numbness in his right hand.  However, on
gross sensory exam, it appears to be grossly intact.

R:     The patient's x-rays show the cornerstone
grafts in good placement, and the plate and screws in
good alignment and in place.

P:     The patient will return to the clinic in four
weeks' time to follow up with Dr. Girasole.
RRL:GJG:dfc

The Orthopaedic &
Sports Medicine Center
888 White Plains Rd.
Trumbull, CT. 06611 203*268-2882
1055 Post Rd.
Fairfield, CT. 06430  203*254-1055

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Gerard J. Girasole, M.D.
Marc J. Warman, M.D.
Michelle Pagliaro Haywood, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C
Niki Bertrand, P.A.-C.



PAGE:

Arthur Kaladish 3-14-01

Psych:  Negative.  Endocrine:  Negative.
Hematologic/Lymphatic:  Negative.
Allergic/Immunologic:  Negative.

PHYSICAL EXAMINATION:  The patient is a
pleasant 54-year-old male well nourished, well
developed in no acute disease or distress with stable
vital signs.  Blood pressure is 142/90.  Skin is intact.
Head and neck exam is unremarkable.  Cardiac:
Regular rate and rhythm, normal S1-S2 without
murmurs, gallops or rubs.  Lungs:  Clear.  Abdomen:
Positive bowel sounds.  The patient is non-tender and
non-distended in all four quadrants.  Rectal:  Not
indicated.  Lymphatic:  No adenopathy.  Neuro:
Cranial nerves II through XII grossly intact, no focal
deficits.  Deep tendon reflexes are intact.

He has significant pain with flexion and extension.
He also has pain with rotation.  He has a positive
Spurling's sign bilaterally.  In his upper extremities
he has some weakness of his biceps and triceps on
the right greater than the left.  His reflexes are 1+ to
2+ bilaterally.  He has a negative Hoffman's.  He has
a negative Lhermitte's.  His sensory exam is grossly
intact to light touch.

RADIOGRAPHS:  Reveal osteophytes at C4-5, C5-6,
and C6-7.

PLAN: Recommendation has been made for surgery.
The risks and benefits of surgery have been
explained to the patient.  The patient elects to
undergo surgery.

The patient now will be admitted to St. Vincent's
Medical Center on 3/27/01 where he will undergo an
anterior cervical discectomy at C4-5, C5-6, C6-7,
with cornerstone grafting and plating.
RRL:GJG:ko

The Orthopaedic &
Sports Medicine Center
888 White Plains Rd.
Trumbull, CT. 06611 203·268-2882
1055 Post Rd.
Fairfield, CT. 06430 203·254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Gerard J. Girasole, M.D.
Marc J. Warman, M.D.
Michelle Pagliaro Haywood, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C
Niki Bertrand, P.A.-C.

PAGE:

Arthur Kaladish   3/14/01

CHIEF COMPLAINT:  Mr. Kaladish presents to the clinic with the chief complaint of neck pain.

HISTORY:  This patient is a 54-year-old male who is well known to Dr. Girasole who had sustained a previous neck injury where he had a fracture C1-C2. He was placed in a halo status post an accident.  At the same time he had also been diagnosed with osteophytes at C4-5, C5-6, and C6-7.  Since then he has always had chronic neck pains and arm pains but his symptoms have progressively worsened over the past 1-1/2 to 2 months.

Recommendation has been made for surgery.  The risks and benefits of surgery have been explained to the patient.  The patient elects to undergo surgery.

The patient now will be admitted to St. Vincent's Medical Center on 3/27/01 where he will undergo an anterior cervical discectomy at C4-5, C5-6, C6-7, with cornerstone grafting and plating.

PAST MEDICAL HISTORY:  Significant for hypertension and a previous neck injury.

PAST SURGICAL HISTORY:  Right knee arthroscopy.

MEDICATION:  Vasotec and Percocet for pain.

ALLERGIES:  No known drug allergies.

SOCIAL HISTORY:  A positive smoker, 1 to 1-1/2 packs per day for 40 years.  He has a negative ETOH and IVDA.

REVIEW OF SYSTEMS:  Constitutional Symptoms: Negative.  Eyes:  Negative.  ENT & Mouth: Negative.  Cardiovascular:  Negative.  Respiratory: Negative.  GI:  Negative.  GU:  Negative.  MS: Negative.  Skin/Breast:  Negative.  Neuro:  Negative.

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611  203•268-2882

1055 Post Road
Fairfield, CT 06430  203•254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.
Niki Bertrand, P.A.-C.

Arthur L. Kaladish  02/18/02

HISTORY:  Arthur returns today for follow-up.
Essentially I have also watched the video on Mr.
Kaladish and it was my interpretation of the video
that this was not beyond what the patient can do.  I
still feel he is markedly disabled in his own
occupation.  I feel that this does not change my
opinion of the patient.  He had a severe fracture of
the occiput cervical area, which now I have
advocated a fusion to stop the pain.  He also has
residual nerve damage in his hands.. This does not
preclude somebody to do the work that he was doing
on the video.

I have discussed this with the patient.  Also at this
point, there is not much else I can offer him besides
the fusion in the back of the neck.  He does not want
to have this done at this point.  He is being treated by
Dr. McAllister for his hands with medication.  We
will see how that does.
GJG:kat   cc:  Compensation, Commissioner, Dr.
Mintz

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611   203•268-2882

1055 Post Road
Fairfield, CT 06430   203•254-1055

2499 Main Street
Stratford, CT 06615   203•377-0003

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.



Kaladish, Arthur    04/17/02

HISTORY:  The patient is back for review.
Essentially he has the same complaints of neck pain,
more relating to his C1, C2.  He also brought the
MRI from 11/01.

PHYSICAL EXAMINATION:  Examination is
essentially unchanged.

RADIOGRAPHS:  The MRI that he had in
November, 2001 shows small herniation, best seen
on the sagittal at C6-7 but no axial compression.

IMPRESSION:  The one way to try to resolve his
neck pain as I discussed with him would be C1, C2
fusion but he is not ready for that at this time.

PLAN:  I will see him back on a prn basis.  GJG:cb

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611  203•268-2882

1055 Post Road
Fairfield, CT 06430  203•254-1055

2499 Main Street
Stratford, CT 06615  203•377-0003

Hart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
Steven P. Fries, P.A.-C., AIC
Rolando R. Lopez, P.A.-C.



Kaladish, Arthur   04/22/02

HISTORY OF PRESENT ILLNESS:  Mr. Kaladish
is here for evaluation of his bilateral knee pain,
worse on the right than the left.  He states that there
must be something wrong with his body.  His knees
are hurting him a lot more, actually all of his joints
and even the joints in his hands, particularly at
night.  He has problems getting to sleep.  He has to
take a lot of OxyContin in the morning to get going
After he is walking for a while, the pain seems to
subside slightly.  He denies any injuries.  He states
that he was about to be sent for a Lyme panel after
seeing his internist, when his internist was called out
on an emergency and did not complete the paper
work but apparently promised to mail it.

PHYSICAL EXAM:  Right knee has an effusion
with synovitis, extends to only about 10 degrees,
flexes to 100.  The incision in the paramedial aspect
is intact, well healed.  He has tenderness on the joint
line and crepitus.  Left knee extends to 0, flexes to
120, but does have a little bit of an effusion as well.

He has the right knee sterilely prepped and a
combination of Xylocaine 1% and 40 mg. of Depo
Medrol was injected after sterile preparation of the
skin and freezing with Ethyl Chloride.

PLAN:  We will add a regular inflammatory panel
with a sed rate and other neurological tests to the
Lyme titer that Dr. Scifo had ordered and follow him
up subsequently.  PSB:cb

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611  203•268-2882

1055 Post Road
Fairfield, CT 06430  203•254-1055

100 Beard Saw Mill Road
Shelton, CT 06484  203•445-5550

2499 Main Street
Stratford, CT 06615  203•377-0003

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
David J. Hochman, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.



Arthur L. Kaladish   06/19/02

HISTORY:  Arthur returns today, he is having
increasing pain in his neck.  He basically is here for
the residual problem that he has had in his neck,
which is the C1, C2 arthritis from this severe
fracture.   I have discussed with him at this point the
two options are not doing anything or to do a fusion.
If we were to do a fusion, I would probably extend
the fusion down, to accommodate his old fusion from
the front, where he had the disc removed.   I have
discussed with him at length the procedure.   He
wants to think about it.

GJG:kat

thopaedic &
s Medicine
. White Plains Rd.
umbull, CT. 06611 203·268-2882

1055 Post Rd.
Fairfield, CT. 06430 203·254-1055

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
Steven P. Fries, P.A.C. A.T.C.
Rolando R. Lopez, P.A.-C



Arthur L. Kaladish    07/18/02

HISTORY OF PRESENT ILLNESS:  He is here for
evaluation of his right knee pain.  He states that his
knee has been giving him more pain.  He has
recently also been diagnosed with rheumatoid
arthritis and has started on Prednisone 5 mg. q.d.
He denies any new injuries but states that he is
considering having the Synvisc injections, a second
set.

PHYSICAL EXAMINATION:  His knee is swollen.
He is able to extend to about 5-10 degrees, flex to 95-
100 degrees.  He has discomfort posteriorly with
some fullness as well as bogginess medially and
laterally as well as palpable spurs.

Under sterile conditions the knee is prepped and
injected with Cortisone and Marcaine.

PLAN:  We will have him continue his efforts at low
impact exercise and follow him up in two months.  If
he is no better, then we will go through the pre-
certification process for getting the Synvisc.  He
states that if that is going to take too long he is
willing to pay for it out of his own pocket.  We will
follow him up at that time.
PSB:dl

The Orthopaedic &
Sports Medicine Center
888 White Plains Road
Trumbull, CT 06611   203•268-2882

1055 Post Road
Fairfield, CT 06430   203•254-1055

100 Beard Saw Mill Road
Shelton, CT 06484   203•445-5550

2499 Main Street
Stratford, CT 06615   203•377-0003

Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
David J. Hochman, D.C.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.
William G.K. Gascoyne, P.A.-C.



Kaladish, Arthur    10/14/02

HISTORY:   The patient returns today, now with
more severe pain in his neck.   It is clearly in his neck
and radiates to his shoulders.

He is very unhappy.

His second reason to be here today was that he had
fallen over the weekend and he has a very large
hematoma on the right thigh.

PHYSICAL EXAM:   As far as the neck is
concerned, he has restricted ROM.   Neurologically,
he is unchanged and he has severe pain.   This is all
stemming back to the malunion from the C1-C2
severe fracture that he had several years ago.

As far as the hip is concerned, he has no pain with
ROM.   He has no crepitation, no deformity.   He has a
large hematoma on the lateral aspect of the thigh.

RADIOGRAPHS:   X-rays of the hip essentially show
no fracture.

IMPRESSION/PLAN:   As far as the neck is
concerned, I would recommend a C1-C2 fusion and
probably extending it down to the same levels that he
was fused anteriorly.   He will think about this.

As far as the hip is concerned, I think it will be self
limiting and take anti-inflammatories.   GJG:cb cc:
Dr. Mintz.

The Orthopaedic &
Sports Medicine Center

888 White Plains Road
Trumbull, CT 06611  203•268-2882

1055 Post Road
Fairfield, CT 06430  203•254-1055



Stuart C. Belkin, M.D.
Michael R. Redler, M.D.
Peter S. Boone, M.D.
Gerard J. Girasole, M.D.
David J. Martin, M.D.
James I. Spak, M.D.
Isaac Cohen, M.D.
Michelle Pagliaro Haywood, D.C.
Alan H. Feldman, D.P.M.
Steven P. Fries, P.A.-C., ATC
Rolando R. Lopez, P.A.-C.
Niki Bertrand, P.A.-C.

Kaladish, Arthur    01/06/03

HISTORY:  The patient has excruciating neck pain.
He says it is so bad that he says·after two hours of
being outside, he gets extreme pain in the neck and
has to actually lie down.

Neurologically, he is unchanged.

PHYSICAL EXAM:  He has marked restriction in
ROM, classic for his C1, C2 fracture that has healed
now with a malunion and he has spondylitic pain
from this.

RADIOGRAPHS:  X-rays do not show any change
in the plate that was placed anteriorly over the grafts
and they appear to be solid.

IMPRESSION:  We will schedule him for surgery.
He is dealing with legal ramifications of his injury
and his work.  Once that has cleared, we will
schedule him for a posterior fusion.  GJG:cb  cc: Dr.
Mintz.