UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE KALADISH a/k/a<br>ARTHUR L. KALADISH<br>    Plaintiff, : : : : | CIVIL NO. 301 CV 184 (DJS) |
| V. : | |
| UNUMPROVIDENT CORPORATION AND<br>PROVIDENT LIFE & CASUALTY<br>INSURANCE COMPANY : : : : | |
|     Defendants. : | AUGUST 24, 2004 |

**REPLY MEMORANDUM TO PLAINTIFF'S OBJECTION
TO DEFENDANTS' MOTION TO SET FEES
FOR PHYSICIAN TESTIMONY AT DEPOSITION**

The defendant, the Provident Life & Casualty Insurance Company (hereinafter "Provident") respectfully files this reply memorandum addressing several of the issues raised by plaintiff in his objection to defendants' motion for the court to set an appropriate hourly fee for the deposition of Gerard Girasole, M.D.

The gravamen of plaintiff's reply is that Dr. Girasole is an expert witness and that $1,200 per hour is a "reasonable" fee for his deposition. Both parties agree that the court has the right and the authority to set a "reasonable" fee. Defendants note that plaintiff in his objection has failed to provide <u>one</u> case or <u>one</u> decision from *any* circuit which holds or held that $1,200 per hour for the deposition of an orthopedic surgeon is a "reasonable" fee. Indeed, Provident notes that the District Court in the case of *Lamere v. New York State Office of the Aging*, 2004 WL 1598778 (N.D.N.Y. 2004) attached by plaintiff as his <u>Exhibit C</u>, actually supports defendants' position that $1,200 per hour is an **unreasonable** hourly fee.

In the 2004 case of *Lamere*, plaintiff's treating physician, Dr. Panzetta, demanded "... a retainer of $2,025 in connection with her preparation and attendance at deposition." (*Id.*, at *1.) The District Court found that $185 per hour was a reasonable fee and determined that five hours, for a total of $925.00, should be sufficient for deposition preparation and the taking of the deposition. (Id., at *8). Defendants note that Girasole's proposed fee of $1,200 per hour is almost seven (7) times the fee of $185.00 per hour the court found reasonable in plaintiff's *Lamere* case.

With regard to the debate as to whether Girasole is an expert witness or treating physician, Provident notes that it previously filed an objection relating to that every issue – claiming that the lack of report rendered Girasole a treating physician.

The defendants also take exception to the unauthenticated and unattested "fee schedule" submitted by plaintiff as Exhibit D to his objection. Defendants assert that this fee schedule is misleading and submits that while Girasole may very well set these fees, it is the payment received for these services that should determine Girasole's fee for deposition. As explained *supra*, Defendants submit that Girasole's payment for these procedures are, in actuality, more likely one quarter to one half the amounts signified by plaintiff's Exhibit D.

    A.    The Fee Schedule Provided by Plaintiff as Exhibit D Does Not Reflect Par Provider Rates of Payment or Non-Surgical Income.

          1.    *Background on Physician Fees*[1]

As with the majority of physicians in Connecticut, Girasole is a participating (or "par") provider with various health insurers. Health insurers contract services for their members with

---

[1] Defendants' counsel who represents a number of health insurers in a variety of matters, offers this overview to the court.

2

organizations known as individual practice associations, or IPAs and in turn, the IPAs (such as the Connecticut State Medical Society) contract with the individual physician. The physician agrees, as a member of the IPA, to provide or arrange for covered services under the terms and conditions set forth by the IPA and/or the insurer's subscriber contract and provider manual.

In return for such membership, and a stream of business, a physician, such as Girasole, although billing at his or her reasonable and customary fee, agrees to accept the discounted fees established by the health insurer or the individual practice for that particular service or treatment. Thus, although the physician may bill the insurer his usual charges, compensation for such service is actually based upon the compensation arrangement set forth by the IPA and insurer. Fee schedules are generally derived from either a modified version of the California relative value scale or the National Medicare Fee Schedule – RBRVS methodology and adjusted for regional areas.

When billing for services, physicians use the Physicians Current Procedural Terminology Codes (CPT) which was developed by the AMA and is a systematic listing and coding of procedures and services performed by physicians. Each procedure or service is identified by a five digit code which simplifies the reporting of services and accurately identifies the procedure or service rendered by the physician. The physician is paid on a "per code" basis pursuant to the established fee.

In addition to receiving a fee which is usually much less than a physician's customary charge, payment is also determined by the use of "modifiers" and provisions such as the multiple surgical rule ("MSR"). For example, most insurers have some variation of an MSR which states:

> "When multiple surgeries are performed during the same surgical session,
> the insurer will reimburse the codes in the following manner:

      100%  for the first or the largest surgery
       50%  for the second approved surgery
       25%  for the third approved surgery
       10%  for each remaining approved procedure"

In short, par providers have agreed to accept as full payment, either through capitation or fee for service payment, the amount of reimbursement that has been established for each procedure.

    2.    *The "par" provider payment rate is substantially below the fees indicated by Girasole on the Fee Schedule provided by plaintiff.*

With the above background in mind, defendants ask the court to review Girasole's fee schedule attached to plaintiff's objection as Exhibit D.

On Exhibit D, Girasole claims that he charges $22,120.00 for a one level lumbar fusion and $6,635.00 for a one level lumbar disc excision. The defendants address each procedure in *seriatim*

    One Level Lumber Disc Excision.

    The CPT code for the simple "lumbar disc excision" (one level) is # 63005 LAMINECTOMY W/EXPLORATION; LUMBAR --one level laminectomy— and currently reimburses, dependent upon the health insurance carrier, at $2300.82 per the 2004 price category. Thus, rather than receiving $6,635.00 for a one level lumber disc excision, if performing this procedure as a par provider for an HMO, Girasole would most likely receive only $2,300 – about 25% of his "usual and customary" fee.

    One Level Lumber Fusion

    The CPT code for the above procedure is 22630 -- ARTHRODESIS, POSTERIOR, LUMBAR  one level fusion—and it reimburses at $ 3,222.97  per the 2004 price category – once again a greatly reduced amount from Girasole's Exhibit D fee schedule of $22,120.00. If a provider such as Girasole did both procedures on the same member, Arthrodesis, posterior interbody technique, including laminectomy and/or diskectomy to prepare interspace (other than for decompression), single interspace; lumbar then *only* CPT code 22630 at one level

would cover this because one procedure would be assumed under the other. Additionally, if both 63005 and 22630 were done at the same session, they would be paid pursuant to the multiple surgical rule which means the provider would receive approximately 50% of the approved fee for the lesser procedure.

Cervical Surgery

Because Girasole's Schedule D uses the generic term "cervical surgery", it is difficult to determine what procedure is being referenced. To give the court some idea of the fees paid to providers for cervical surgery and cervical fusions, CPT code 22845 refers to an Anterior Instrumentation of 2-3 vertebrae. This code is modifier 51 exempt, cannot be billed per the multiple surgical rule and is usually paid at 100% of the 2004 par provider allowable rate of $722.49.

Defendants acknowledge that the above are fees usually paid for procedures performed by in network, par providers and also acknowledge that payment fees differ among the various insurers, HMO and medical networks. However, defendants note that Girasole produced no evidence to show that for the majority of his practice he is *paid* the fees shown in plaintiff's Exhibit D.

To aid the Court in this review, defendants attach as Exhibit 1, Girasole's bill to Kaladish's insurance company as well as the operative report for the cervical fusion he performed on Kaladish in March 2001. A review of this bill and operative note indicates that Girasole performed cervical surgery on two levels, C4-C5 and C5-C6, and was assisted by another physician, Dr. Abraham Mintz.

With regard to this surgery, Girasole charged the insurer a fee of $8,015.00 for CPT 22845 Anterior Instrumentation, 2-3 V (anterior instrumentation of 2-3 vertebrae). If this procedure was done as a "par" provider, the code would be modifier 51 exempt, could not be billed per the multiple surgical rule and would be paid at 100% of the allowable rate which in 2004 is $722.49. Girasole billed the insurer $6,500 for CPT code 22554 Arthrodesis w/mim

5

diskectomy, B. This code refers to Arthrodesis, anterior interbody technique, including minimal diskectomy to prepare interspace (other than for decompression) below the C2 level and has a maximum allowable rate of $3,043.08. With regard to CPT code 22585 Arthrodesis w/mim diskectomy, E, for which Girasole billed $1,400, this code refers to Arthrodesis, anterior interbody technique, including minimal diskectomy to prepare interspace (other than for decompression). The 100% allowable rate for this procedure is $772.49. All three codes could be billed together if there was an anterior interbody arthrodesis or fusion at two cervical levels and anterior instrumentation was also done at the minimum of 2 and maximum of 3 vertebrae.

In short, although Girasole charged almost $20,000 for the surgery performed on Kaladish in 2001, if Girasole was a par provider for a major HMO, and if the surgery was performed today "in network", he would actually receive only about half of that amount.

B.  The Fee Schedule Provided by Plaintiff as Exhibit D Does Not Reflect the Actual Rates Charged for Such Surgery

With regard to Girasole's fee schedule as related to his cervical surgery, Exhibit 1 indicates that Girasole performed cervical surgery on two levels. According to Exhibit D and his fee schedule, he should have charged Kaladish in excess of $31,000 for these two procedures alone yet his entire bill, covering all manner of visits and service (including x-rays) from March 25, 2000 to June 27, 2001 – a 16 month period - is only $22,042. Defendants additionally note that the $22,042 is apparently the amount <u>charged</u> by Girasole to Kaladish's insurer[2] as his usual and customary fee and does not necessarily reflect the amount he was actually paid by the insurer.

---

[2] Defendants believe that Kaladish was insured through a private health insurance policy rather than an HMO or its equivalent. This may result in higher rates paid to the provider for services rendered to Kaladish.

6

Plaintiff argues in his objection that on " ... a typical day, [Girasole's] surgery schedule will allow him to charge between $30,000-$40,000" (P. Obj., ¶ 15). Plaintiff apparently bases the reasonableness of Girasole's $1,200 per hour fee *solely* on his "full rate, non par" surgical fee schedule. Defendants note that this allegation does not take into consideration the differences between charges and payment and more importantly the time Girasole spends on lesser-compensated office visits and consultations as well as non-compensable administrative work which greatly lower Girasole's income and hence the "reasonableness" of his fee.

Defendants expect plaintiff to protest their analysis of the situation but unfortunately, the cold, hard equations indicate that Girasole's $1,200 fee is unreasonable. Assuming that after weekends, vacations, holidays, etc., that Girasole works 220 days per year and receives $35,000 per day as implied by plaintiff in paragraph 15 of his objection - Girasole's yearly income would exceed $7,700,000! Assuming that Girasole worked 220 days per year at eight (8) hours per day, an average fee of $1,200 per hour indicates practice income of $2,112,000 per year. Should Girasole provide copies of any tax document which indicates that he *personally* (and not his orthopedic group as a whole) produced and received this amount of income from his practice, defendants would be happy to reconsider its position.

**CONCLUSION**

In light of the foregoing, and in light of the fact that plaintiff could not find one case that allowed a fee in excess of $400 per hour, Provident requests this court to order that Dr. Girasole, be he expert witness or treating physician, be compensated at an hourly rate of between $300 and $400 for his deposition (excluding preparatory time).

7

With regard to the self-imposed two hour limit, Provident understands that Dr. Girasole has relented on this condition and has agreed to be deposed for a four hour period. However, in case Provident has misunderstood, it does ask the court to include in any order it makes with regard to the fee, that Dr. Girasole be deposed within one continuous four (4) hour deposition session.

        Respectfully Submitted,

        DEFENDANTS
        UNUMPROVIDENT CORPORATION
        AND PROVIDENT LIFE & CASUALTY
        INSURANCE COMPANY

By *[signature: Helen M. Kemp]*
        Helen M. Kemp (ct 14790)
        Theodore J. Tucci (ct 05249)
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT 06103-3597
        Tel. No.: (860) 275-8200
        Fax No.: (860) 275-8299
        E-mail: hkemp@rc.com

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 24th day of August, 2004, to

Tracy Alan Saxe, Esq.
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517

                                                            */s/ Helen M. Kemp*
                                                            Helen M. Kemp

# **<u>Exhibit 1</u>**

```
                    THE ORTHOPAEDIC & SPORTS MEDICINE CENTER
                              888 WHITE PLAINS ROAD
                               TRUMBULL, CT 06611

                               TAX ID# 061393886
                     FOR BILLING QUESTIONS CALL (203) 268-2882


        OSM TRUMBULL                                              1



   ARTHUR L KALADISH                                       09/28/01
   10 WINCHESTER DR
   SHELTON CT 06484




         KALADISH          ARTHUR                MN028827
```

CPT CODE (Hmk)    DESCRIPTION OF CODE (Hmk)

```
03/25/00   12  99213    OFFICE/OUTPATIENT VISIT, EST, I       65.00              6
09/05/00   12  99213    OFFICE/OUTPATIENT VISIT, EST, I       65.00             13
09/05/00   12  72040    X-RAY EXAM, CERVICAL SPINE, AP       115.00             24
12/01/00   12  99213    OFFICE/OUTPATIENT VISIT, EST, I       65.00             31
12/01/00   12  72050    X-RAY EXAM, CERVICAL SPINE, 4+      150.00              46
01/12/01   12  99214    OFFICE/OUTPATIENT VISIT, EST, E       92.00             55
02/05/01   12  99213    OFFICE/OUTPATIENT VISIT, EST, I       65.00*            61
03/26/01       22845    ANTERIOR INSTRUMENTATION, 2-3 V    8,015.00            863
03/26/01       22554    ARTHRODESIS W/MIM DISKECTOMY, B    6,500.00           1513
03/26/01       22585    ARTHRODESIS W/MIM DISKECTOMY, E    1,400.00           1653
03/26/01       20931    ALLOGRAFT, SPINE SURGERY, STRUC      380.00           1691
03/26/01       99223    INITIAL HOSPITAL CARE, EXTENDED      219.00           1713
03/26/01       22845    ANTERIOR INSTRUMENTATION, 2-3 V    2,004.00           1913
03/26/01       22554    ARTHRODESIS W/MIM DISKECTOMY, B    1,625.00           2076
03/26/01       22585    ARTHRODESIS W/MIM DISKECTOMY, E      350.00           2111
03/26/01       20931    ALLOGRAFT, SPINE SURGERY, STRUC       95.00           2120
04/11/01   12  99024    POSTOP FOLLOWUP VISIT                 70.00           2127
04/11/01   12  72040    X-RAY EXAM, CERVICAL SPINE, AP       115.00           2139
05/09/01   12  99024    POSTOP FOLLOWUP VISIT                 70.00*          2146
05/09/01   12  72040    X-RAY EXAM, CERVICAL SPINE, AP       130.00*          2159
06/25/01   12  99024    POSTOP FOLLOWUP VISIT                 70.00           2166
06/25/01   12  20610    ARTHROCENTESIS MAJOR JOINT/BURS      145.00           2180
06/25/01   12  J3490    MARCAINE .25%                         12.00           2181
06/25/01   12  J1030    DEPOMEDROL 40MG/ML                    20.00           2183
06/27/01   12  99213    OFFICE/OUTPATIENT VISIT, EST, I       75.00           2191
06/27/01   12  72040    X-RAY EXAM, CERVICAL SPINE, AP       130.00           2204

     CURRENT       30 DAYS     60 DAYS    > 90 DAYS       TOTAL     INS PENDING    TOTAL D
                                                       22,042.00


                       THE ORTHOPAEDIC & SPORTS MEDIC
                              888 WHITE PLAINS ROAD
```

MN028827          TRUMBULL CT 06611

OSM TRUMBULL

\*     203 268 2882

THE ORTHOPAEDIC & SPORTS MEDICINE CENTER
888 WHITE PLAINS ROAD
TRUMBULL, CT 06611

TAX ID# 061393886
FOR BILLING QUESTIONS CALL (203) 268-2882

OSM TRUMBULL                                                              1

ARTHUR L KALADISH                                                09/28/01
10 WINCHESTER DR
SHELTON CT 06484

KALADISH          ARTHUR                      028827

| Date | | Code | Description | Amount | |
|---|---|---|---|---|---|
| 03/25/00 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 65.00 | 6 |
| 03/25/00 | 12 | 73560 | X-RAY EXAM, KNEE, AP & LATERAL | 83.00 | 14 |
| 06/01/00 | 12 | 99214 | OFFICE/OUTPATIENT VISIT, EST, E | 92.00 | 24 |
| 06/01/00 | 12 | 72100 | X-RAY LOWER SPINE, AP & LATERAL | 101.00 | 34 |
| 03/14/01 | 12 | 99214 | OFFICE/OUTPATIENT VISIT, EST, E | 92.00* | 43 |
| 07/20/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00 | 50 |
| 07/20/01 | 12 | 20610 | ARTHROCENTESIS MAJOR JOINT/BURS | 145.00 | 65 |
| 07/27/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00* | 72 |
| 07/27/01 | 12 | 20610 | ARTHROCENTESIS MAJOR JOINT/BURS | 145.00* | 87 |
| 08/03/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00* | 94 |
| 08/03/01 | 12 | 20610 | ARTHROCENTESIS MAJOR JOINT/BURS | 145.00* | 109 |
| 08/28/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00* | 116 |
| 08/28/01 | 12 | 73110 | X-RAY EXAM, WRIST, COMPLETE, 3+ | 95.00* | 126 |
| 08/28/01 | 12 | L3930 | THUMB SPLINT-GAMESKEEPER | 49.00* | 131 |
| 09/05/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00* | 138 |
| 09/05/01 | 12 | 72050 | X-RAY EXAM, CERVICAL SPINE, 4+ | 170.00* | 155 |
| 09/14/01 | 12 | 99213 | OFFICE/OUTPATIENT VISIT, EST, I | 75.00* | 163 |

| CURRENT | 30 DAYS | 60 DAYS | > 90 DAYS | TOTAL | INS PENDING | TOTAL D |
|---------|---------|---------|-----------|-------|-------------|---------|
|         |         |         |           | 1,632.00 |          |         |

```
                                 THE ORTHOPAEDIC & SPORTS MEDIC
                                 888 WHITE PLAINS ROAD
         028827                  TRUMBULL CT 06611

         OSM TRUMBULL

*        203 268 2882
```

KALADISH, ARTHUR
G. GIRASOLE, MD
62551106  MR#:  006408
3/26/01



**PREOPERATIVE DIAGNOSIS:**
Cervical spondylosis with herniated disk, C4-C5 and C5-C6, with radiculopathy.

**POSTOPERATIVE DIAGNOSIS:**
Same.

**SURGEON:**
Dr. Girasole.

**ASSISTANT:**
Rolanda Lopez, PA.

**OPERATION:**
(Anterior cervical diskectomy of C4-C5 and C5-C6 to be dictated by Dr. Mintz.)
1. Anterior cervical interbody fusion, C4-C5 and C5-C6, with use of cornerstone allograft filled with demineralized bone paste.
2. Anterior cervical plating using an Atlanta system.

**OPERATIVE PROCEDURE:**
The patient was taken into the operating room. He was placed under general endotracheal anesthesia in the supine position. The neck was sterilely prepped and draped, and the anterior approach and diskectomy will be dictated by Dr. Mintz. Once he had completed this part of the procedure, we then prepared for our interbody fusion.

A Smith-Robinson technique was used, which called for squaring off the end plates using a high-speed bur to accommodate a square tricortical graft. Starting at the C5-C6 level, we first put Cloward pin distracters into the body of C5 and C6. We distracted out the interspace and lordosis. We then burred the end plates to square them off, and then we measured to a size 8-mm cornerstone graft. We then took the graft, filled the center of it with demineralized bone paste, and under distraction we tapped the graft into place gently to be seated approximately countersunk 1-2 mm from the end plate of C5 and C6. We

PROCEDURE REPORT

KALADISH, ARTHUR
G. GIRASOLE, MD
62551106 MR#:   006408
3/26/01


then released our distraction and had excellent compression of the graft.  This same procedure was repeated at C4-C5.  However, at this level we used a 7-mm graft.  Once both grafts were placed we then affixed an Atlanta plate to the anterior aspect of the spine.  We placed 1 screw in the body of C4, 1 screw in the body of C6 in a diagonal fashion, and then took an x-ray.  X-rays confirmed anatomical placement of our graft and anatomical placement of our plate and screws.  We then put an additional screw in C4, 2 screws in C5, and 1 additional screw in C6.  We did our final locking and had excellent purchase of each screw.  Final x-rays confirmed that the additional screws were well placed.  We were now ready for closure.

Closure consisted of removing our retractors, obtaining hemostasis, irrigating the wound copiously, and then closing the platysma with #2-0 Vicryl, #2-0 Vicryl for the subcutaneous tissue, and staples used for the skin.  A sterile dressing was applied.  The patient was placed in a hard collar.  He was extubated in the operating room and taken to the recovery room in stable condition.

There were no complications.

The blood loss was minimal.

The lap count, paddy count, sponge count, and needle count were all said to be correct prior to closure.


                                        _____
                                        G. Girasole, MD

dd:   03-26-01
dt:   03-27-01/TEM/wsb
job#: 30967


PROCEDURE REPORT

KALADISH, ARTHUR
ABRAHAM MINTZ, M.D.        DANIEL E. NIJENSOHN, M.D.
62551106/MR#:006408        G. GIRASOLE, M.D.
3/26/01                    R. LOPEZ, P.A.

**PREOPERATIVE DIAGNOSIS:**
Cervical disk herniation C4/C5 and C5/C6.

**POSTOPERATIVE DIAGNOSIS:**
Cervical disk herniation C4/C5 and C5/C6.

**OPERATION:**
Insertion of Gardner-Wells tongs.
Anterior cervical disk excision at C4/C5 and C5/C6.

**BRIEF SUMMARY OF THE CASE:**
Patient is a 66-year-old gentleman who approximately a year ago suffered a C2 fracture that was treated with halo vest. He also sustained a fracture to the left arm. Magnetic resonance scan demonstrated disk herniation at C4/C5 and C5/C6 towards the left side.

**OPERATIVE PROCEDURE:**
Patient was put under general anesthesia. The tongs were inserted in order to provide adequate traction and visualization during the anterior cervical disk excision and fusion. The temporoparietal areas were thoroughly cleansed with Betadine. The tongs were inserted on the temporal side of the temporoparietal junction and tighten up to a point of 1 mm on the measuring pin. The neck was supported on an intravenous bag and 10 pounds of traction attached. Planned skin incision was infiltrated with lidocaine with epinephrine, it was a curvilinear incision at the thyroid cartilage on the right side. The skin was incised. The planned skin incision was separated from the subcutaneous tissue up along the course of its fibers. The medial edge of the sternocleidomastoid muscle was dissected in the posteromedial direction leaving the carotid ___ sheath laterally and the trachea and esophagus medially. A spinous tap needle was placed and lateral x-ray obtained to localize C4/C5 and C5/C6. The needle was at the C4/C5 space. The C5/C6 space was very narrow. Also there was a subluxation of C4/C5. The medial edges of the longus coli muscles were coagulated in the serrated blade space under them. Blunt blades were used for retraction superiorly and inferiorly.

PROCEDURE REPORT

KALADISH, ARTHUR
ABRAHAM MINTZ, M.D.           DANIEL E. NIJENSOHN, M.D.
62551106/MR#:006408           G. GIRASOLE, M.D.
3/26/01                       R. LOPEZ, P.A.

The disk spaces were incised and entered systemically with pituitary forceps and curets of different angles and sizes. The C5/C6 space was very degenerated and could not be emptied with pituitary forceps so the high-speed drill had to be used all the way to the pituitary longitudinal ligament. At the level of the b___, this drill was also used to square off the space in preparation for fusion and to remove the cartilaginous end plates. The posterior longitudinal ligament was opened at both levels after exposing and decompressing the dura. Osteophytectomy superiorly and inferiorly were carried out along with foraminotomy bilaterally. There was disk material herniated at the level of b____ being contained by the ligament. At the level of ____, there appeared to be degenerative disk with osteophytic part. The wound was thoroughly irrigated with bacitracin solution and the skin was turned over to Dr. Girasole to perform the stabilization. He will dictate that part of the procedure.

                              _____
                              ABRAHAM MINTZ, M.D.

DD:   3/26/01 2233
DT:   3/28/01 0800/TEM/mrt
JOB#: 31125

PROCEDURE REPORT